UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAN AGAINST XTINCTION A/K/A "MAX"            )
                                             )
          *Plaintiff*                        )
                                             )        Civil Action No.
v.                                           )
                                             )        _____
SECRETARY, MASSACHUSETTS EXECUTIVE           )
OFFICE OF ENERGY AND ENVIRONMENTAL           )
AFFAIRS ("MEOEEA")                           )        4 April 2019
                                             )
DIRECTOR, MASSACHUSETTS DIVISION             )
OF MARINE FISHERIES ("MDMF")                 )
                                             )
ARTHUR SAWYER as president of the            )
MASSACHUSETTS LOBSTERMEN'S ASSOCIATION       )
AS REPRESENTING ALL IT'S MEMBERS ("MLA")     )
                                             )
CENTER FOR COASTAL STUDIES                   )
                                             )
JOHN HAVILAND                                )
                                             )
          *Defendants*                       )

VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND OTHER RELIEF AND A REQUEST FOR A JURY TRIAL

I the Plaintiff — Richard Maximus Strahan — SPEAK:

1.    Plaintiff Man Against Xtinction ("MAX") is a licensed commercial lobster fisherman, avid whale watcher, and professional protector of endangered wildlife species who is bringing the instant action to obtain injunctive and compensatory relief from each of the Defendants. **FN1** He is seeking injunctive relief to do two things. First to stop the State

---

[1] The Plaintiff is a "Green Fisherman" who does not want to injure other species of marine wildlife when he attempts to sustainably harvest lobsters. The State Defendants have adopted regulations requiring the use of Vertical Buoy Ropes (VBR) or Killing Ropes in lobster/pot and gill net commercial fishing licensed by them. The State Defendant are threatening the Plaintiff with fines and loss of his right to fish if he does not use Killing Ropes that will cause him to "take" endangered marine wildlife in violation of the ESA's Section 9 prohibitions against such.

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 2 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)                                    2

Defendants from requiring him by regulation to use fishing gear in Massachusetts coastal waters that kills and injures Endangered Whales and Sea Turtles. The Second is to stop the State Defendants from licensing any fishing gear in a manner that requires the licensed fishermen to use vertical buoy ropes. Third, the Plaintiff is seeking an injunction to enjoin the State Defendants from further licensing marine fisheries activities until they have applied for and receive from the federal government an incidental take permit under Section Ten of the Endangered Species Act that authorizes them to license and regulate marine fisheries in United States coastal waters. **FN2** The Plaintiff is claiming that the State Defendants current licensing and regulating of marine fisheries activities in US coastal waters under the concurrent jurisdiction of Massachusetts is in violation of the ESA's Section 9 prohibitions against the "taking" of ESA listed species of whales and sea turtles. **FN3** The State Defendants requiring the use of VBR in lobster pot gear and gill nets violates the ESA's Section 9 prohibitions against "taking" ESA listed species of whales and sea turtles.

2.      The Massachusetts state agencies employing the named Defendant state defendants have every year since 1973 killed and injured Right Whales and other endangered species of whales and of turtles listed as protected under the Endangered Species Act. **FN4** They have done so incidental to their licensing of Lobster Pot and Gill Net fishing by requiring the use of VBR by their licensed agents.

3.      In 1996, this Court thoroughly reviewed the State Defendant and the Defendant MLA's commercial fishing activities and ruled that endangered whales are routinely entangled in

---

[2] ESA Section 10 at 16 USC § 1539.

[3] See 322 CMR § 4.13(c): "Surface Identification of Traps. 1. Single Traps. Single traps shall each be marked with a single buoy measuring at least seven inches by seven inches or five inches by 11 inches. Sticks are optional, but if used, shall not have a flag attached. 2. Trawls. The east end of a trawl shall be marked with a double buoy, consisting of any combination of two buoys measuring at least seven inches by seven inches or five inches by 11 inches and one or more three foot sticks. The west end of a trawl shall be marked with a single buoy measuring at least seven inches by seven inches or five inches by 11 inches buoy with a three foot stick and a flag."

[4] 16 USC § 1538(a and g). Section 9 of the Endangered Species Act "prohibits" the incidental killing and/or injuring of any species listed as endangered under the Act: ESA: "It is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas."

Case 1:19-cv-10639-IT Document 1 Filed 04/04/19 Page 3 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)

3

VBR used in the Massachusetts state lobster pot fisheries in violation of the ESA Section 9 prohibition. **FN5** The Court also ruled that the State Defendants were liable for each and every entanglement of an endangered whales by the fishing gear deployed by their licensed agents. The Court deemed it fitting to order the State Defendants to apply for an obtain a a ESA Section 10 Incidental Take Permit from the federal government to authorize its commercial fisheries activities so they no longer would violate the ESA.

4. The Defendant Sawyer is a Massachusetts state actor and CEO of Defendant Massachusetts Lobstermen's Association. Sawyer has been appointed to the Massachusetts Marine Fisheries Advisory Commission which has exclusive state regulatory authority over commercial fishing in Massachusetts waters. Sawyer conspires with all the other voting members of the MLA to conduct commercial fishing operation that use VBR and which violate the ESA's Section 9 prohibitions by "taking" of ESA listed species of whales and sea turtles. Sawyer and the MLA conspire with the State Defendants to insure that only their members can obtain fishing licenses from the State Defendants. Sawyer and the MLA oppose Green Fishermen from fishing in Massachusetts waters by also using threats of violence against them and the destruction of their fishing gear. The Plaintiff has been coerced by Sawyer and the MLA to not openly practice Green Fishing and by their intimidation and use threats of violence and theft of his property.

5. The Defendant Center for Coastal Studies is being sued as acting in concert with the State Defendants to insure that they can continue to license fishing gear that entangles and otherwise unlawfully "takes" ESA listed species of whales and sea turtles. Defendant CCS has been paid millions of dollars by the State Defendants since 1989 to serve has its agents to spread propaganda to promote the State Defendants and Defendant MLA's unlawful activities to the Public. Defendant CCS has been given exclusive access to entangled wildlife and actively prevents the Public from getting access to CCS's exclusive information about entangled whales and sea turtles in Massachusetts coastal waters. This is deliberately done to impede the Public from obtaining evidence of the entanglement of marine wildlife. Defendant conspires with the other Defendants to do this to insure that the unlawful *status quo* is maintained and that the

---

[5] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit. 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency).

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 4 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* **(D. Mass 2019)** 4

Plaintiff and the Public will be prevented from being able to fully document the unlawful killing of marine wildlife from the other Defendants licensing and practice of gill netting and lobster pot fishing in Massachusetts coastal waters.

6.    The Court is mandated by the ESA and the Public Interest to FINALLY permanently enjoin the State Defendants from requiring any further deployment of Vertical Buoy Ropes for use with Pot Gear and Gill Nets into US coastal waters. These Killing Ropes are the single most significant cause for the fishing gear licensed and regulated by the State Defendants routinely entangling Endangered Whales and Sea Turtles. The simple deployment of Killing Ropes must be considered a categorical violation of the ESA's Section 9 prohibitions against taking Endangered Whale and Sea Turtles.

7.    The Plaintiff is also bringing supplemental claims against the Commercial Defendants (i. e. MLA, Sawyer, Fishfuck and CCS for tortious injuries inflicted on him and the Public by their being a public nuisance and for violations of the Massachusetts Civil Rights Act by using threats of killing endangered wildlife to interfere with MAX's enjoyment of the his protected right under the Massachusetts Constitution to enjoy the environment.

8.    The Plaintiff is Petitioning the Court for —

A.    A Declaratory Judgment from the Court declaring that the deployment of any VBR in the marine habitat historically used by Endangered Whales and Sea Turtles is a categorical violation of the ESA's Section 9 prohibitions against taking any of its listed species of wildlife.

B.    A Declaratory Judgment that the State Defendants requiring the use of VBR's in fishing gear deployed in US coastal waters is also a violation of the ESA's Section 9 prohibitions against taking.

C.    A permanent injunction banning the State Defendants from requiring the Plaintiff and other licensed fishermen to use VBRs on their fishing gear.

D.    An order requiring that the State Defendants apply for an ESA Section 10 Incidental Take Permit from the federal government that authorizes them to deploy fishing gear in US coastal waters that might harm endangered wildlife.

E.    The Plaintiff is also seeking appropriate award of compensatory and punitive damages against each of the Commercial Defendants.

9.    The Plaintiff is seeking a Jury Trial against each of the Defendants.

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 5 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)                                    5

### The Parties

10.     Plaintiff Richard Maximus Strahan in 2016 graduated *magnum cum laude* with a Bachelor of Arts degree in Classics Studies from the University of Massachusetts in Boston MA. He is licensed by the State Defendants to do lobster pot fishing in Massachusetts State waters. He is also licensed as a commercial lobster pot fisherman by the State of New Hampshire. He is also an avid whale watcher and researcher on sea turtles. He is the Chief Science Officer of Whale Safe USA, a campaign to make the US coastline environmentally safe for endangered species of coastal whales and sea turtles. His business mailing address is P. O. Box 82, Peterborough NH 03458.

11.     Defendant Director of the Massachusetts Division of Marine Fisheries is being sued in its official capacity as a violator of the ESA Section 9 prohibitions on taking ESA listed species. The Director of the MDMF official business address the Office of the Director, Division of Marine Fisheries, 251 Causeway Street, Suite 400, Boston, MA 02114.

12.     Defendant Secretary of the Executive Office of Energy and Environmental Affairs is being sued in its official capacity as a violator of the ESA Section 9 prohibitions on taking ESA listed species. This Defendants' official business address.

13.     Defendant Massachusetts Lobstermen's Association Inc. and its members are being sued as violators of the ESA Section 9 prohibitions on taking ESA listed species. The MLA'S official business address is 8 Otis Place Scituate, MA 02066-1323.

14.     Defendant Arthur Sawyer is being sued in his official capacity as the executive officer of the Massachusetts Lobstermen's Association and in his official capacity as a member of the Massachusetts' Marine Fisheries Advisory Commission. He is also being sued as an individual. His business mailing address is Arthur Sawyer, 368 Concord Street, Gloucester, MA 01930. His official address as a member of the MMFAC is % Marine Fisheries Advisory Commission, 251 Causeway Street, Suite 400, Boston, MA 02114.

15.     Defendant John Haviland is being sued as an individual in his personal capacity. His business mailing address is John Haviland % PO Box 543, Green Harbor, MA 02041.

16.     Defendant Center for Coastal Studies is a Massachusetts corporation doing business in many states. Its business address is Center for Coastal Studies, 5 Holway Avenue, Provincetown. MA 02657.

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 6 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.*  (D. Mass 2019)                    6

17.     Defendant Massachusetts Lobstermen Association is a register corporation
operating in Massachusetts and other states. Its official agent's address is Massachusetts
Lobstermen Association, 8 Otis Place, Scituate, MA 02066

### Jurisdiction and Standing

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal
question) under the ESA, APA, 5 U.S.C. § 701 et seq. (APA), 28 U.S.C. § 1361 (mandamus) and
may issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2201, 2202
(declaratory and injunctive relief). An actual, justiciable controversy now exists between
Plaintiff and Defendants, and the requested relief is proper under 28 U.S.C. §§ 2201-2202, 5
U.S.C. §§ 701–706, and 16 U.S.C. § 1540(g).

19.     Venue in this judicial district is proper under 28 U.S.C. § 1391(e) because this is
an action against an agency of the United States and officers of the United States acting in their
official capacity. Additionally, at least one plaintiff resides in this district.

20.     The Plaintiff has Article III standing pursuant to his living and working in the
habitats of Endangered Whales and Sea Turtles. These species are migratory. And their being
killed and injured by the Defendants in Massachusetts adversely affects their appearance and
presence in New Hampshire, Maine and in other coastal states. The Plaintiff has previously
served the requisite notice under 6 USC § 1540(g) in a timely manner on each of the Defendants
of his intent to bring the instant claims against them under the ESA.

21.     The Plaintiff has Article III standing because he is personally being injured by the
Defendants unlawful activities —

A.  The Plaintiff conducts research on endangered species of whales and sea turtles off
the US northeast Atlantic coast. and These species decline and extinction is adversely
affecting his scientific research interests in these species. As an enthusiastic "whale
watcher" off the coastline of Massachusetts, New Hampshire and Maine he has a
vested interest in protecting the abundance of whales for his viewing activities and to
have more personal access to these whales by having them delisted as ESA protected
species.

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 7 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)                    7

B.  As a licensed commercial fishermen in New Hampshire and Massachusetts, the plaintiff is being injured by the Defendants by their requiring him pursuant to to his licensure to use vertical buoy ropes on his lobster pot gear. This requirement unlawfully exposes him to violate the ESA by causing the entanglement of EFA listed species of endangered whales and sea turtles in his fishing gear. Also the Plaintiff seeks to increase the number of ESA listed species off the US coastline and this interest is adversely affected by his having to use VBR that kills and injures ESA listed species. Additionally, the Plaintiff is attempting to operate a "Whale Safe" business offering Lobsters for sale that were harvested in an environmentally safe manner. The Defendants requirement that he use VBR is antithetical to his commercial interests in operating a business to provide "Whale Safe" caught Lobsters for sale.

C.  The Plaintiff operates a business in New Hampshire, Massachusetts and Maine to protect and recover ESA listed species. His customers pay him money to stop the killing of whales and sea turtles and increase their numbers. The Defendants continued unlawful killing and injuring ESA listed species antithetical to the business interests of the Plaintiff.

D.  The enjoys the consumption of Lobsters. However he cannot eat Lobsters as long as they are harvested in a manner that kills or injures ESA listed species.

### The Regulatory Scheme for the Protection of Endangered Species of Plants and Animals

22.     In enacting the ESA, Congress recognized that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction" and that these species are "of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a) (2) and (3).

23.     The ESA protects imperiled species by listing them as "endangered" or "threatened." A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). The Secretary of Commerce is charged with administering and enforcing

Case 1:19-cv-10639-IT    Document 1    Filed 04/04/19    Page 8 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)

8

the ESA for most marine species, including North Atlantic right whales, and has delegated this responsibility to NOAA. 50 C.F.R. § 402.01(b).

24.    The ESA seeks "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such . . . species." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." Id. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to prevent listed species from going extinct, but also to recover these species to the point where they no longer require ESA protection.

25.    To accomplish these goals, Section 9 of the ESA generally makes it unlawful for "any person" to "take" an endangered species. Id. § 1538(a)(1). A "person" includes private parties as well as local, state, and federal agencies. Id. § 1532(13). "Take" is defined broadly under the ESA to include harassing, harming, wounding, killing, or capturing a protected species (or attempting to engage in such conduct), either directly or by degrading its habitat enough to impair essential behavior patterns. Id. § 1532(19); 50 C.F.R. § 222.102. The ESA prohibits the acts of parties directly causing a take as well as the acts of third parties, such as governmental agencies, whose acts cause such taking to occur. 16 U.S.C. § 1538(g).

26.    Additionally, Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any" endangered or threatened species. Id. § 1536(a)(2).

27.    To comply with Section 7(a)(2)'s substantive mandate, federal agencies must consult with NMFS when their actions "may affect" a listed marine species. 16 U.S.C. § 1536(a)(2). NMFS and the action agency must utilize the "best scientific and commercial data available" during the consultation process. Id.; 50 C.F.R. § 402.14(a).

30.    Where, as here, NOAA is the action agency as well as the expert consulting agency, NOAA must undertake intra-agency consultation. At the completion of consultation, the consulting branch of NOAA issues a biological opinion that describes the expected impact of the agency action on listed species. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14.

31.     The biological opinion must include a summary of the information upon which
the opinion is based, an evaluation of "the current status of the listed species," the "effects of the
action," and the "cumulative effects." 50 C.F.R. § 402.14(g)(2), (g)(3).

32.     "Effects of the action" include both direct and indirect effects of an action "that
will be added to the environmental baseline." Id. § 402.02. The "environmental baseline"
includes "the past and present impacts of all Federal, State or private actions and other human
activities in the action area, the anticipated impacts of all proposed Federal projects in the action
area that have already undergone formal or early section 7 consultation, and the impact of State
or private actions which are contemporaneous with the consultation in process." Id. "Cumulative
effects" include "future State or private activities, not involving Federal activities, that are
reasonably certain to occur within the action area." Id.

33.     Thus, in issuing a biological opinion, NOAA must consider not just the isolated
share of responsibility for impacts to the species traceable to the activity that is the subject of the
biological opinion, but also the effects of that action when added to all other activities and
influences that affect the status of that species.

34.     After NOAA has added the direct and indirect effects of the action to the
environmental baseline and cumulative effects, it must make its determination of "whether the
action is likely to jeopardize the continued existence of a listed species." 16 U.S.C. § 1536(b)(3),
(b)(4); 50 C.F.R. § 402.14(h). A likelihood of jeopardy is found when "an action [ ] reasonably
would be expected, directly or indirectly, to reduce appreciably the likelihood of both the
survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or
distribution of that species." 50 C.F.R. § 402.02. Recovery is defined as "improvement in the
status of listed species to the point at which listing is no longer appropriate." Id.

35.     A biological opinion that concludes that the agency action is not likely to
jeopardize the continued existence of a listed species but will result in take incidental to the
agency action must include an incidental take statement. 16 U.S.C. § 1536(b)(4).

36.     The incidental take statement must specify the amount or extent of incidental
taking on such listed species, "reasonable and prudent measures" that NMFS considers necessary
or appropriate to minimize such impact, and set forth "terms and conditions" that must be
complied with by the action agency to implement the reasonable and prudent measures. Id.; 50
C.F.R. § 402.14(i). Additionally, when the listed species to be incidentally taken are marine

mammals, the take must first be authorized by NMFS pursuant to the MMPA, and the incidental take statement must include any additional measures necessary to comply with the MMPA take authorization. Id.

37.     The take of a listed species in compliance with the terms of a valid incidental take statement is not prohibited under Section 9 of the ESA. 16 U.S.C. § 1536(b)(4), (o)(2); 50 C.F.R. § 402.14(i)(5).

38.     If NMFS determines in its biological opinion that the action is likely to jeopardize the continued existence of a listed species, the biological opinion must include "reasonable and prudent alternatives" to the action that will avoid jeopardy. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

39.     Regardless of the conclusion reached in the biological opinion, the agency undertaking the federal action has an independent duty to ensure that its actions are not likely to jeopardize the continued existence of listed species. 16 U.S.C. § 1536(a)(2). An agency's reliance on a legally flawed biological opinion to authorize an action does not satisfy its substantive duty to ensure against jeopardy.

40.     Moreover, the ESA's implementing regulations further require an agency to reinitiate Section 7 consultation when: (a) the amount of take specified in the incidental take statement is exceeded; (b) new information reveals that the action may have effects not previously considered; (c) the action is modified in a way that was not previously considered; or (d) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16.

41.     The ESA specifies that Section 7 consultation must typically be completed within ninety days after initiation. 16 U.S.C. § 1536(b)(1); 50 C.F.R. § 402.14(e). The substantive duty to ensure against jeopardy of listed species remains in effect regardless of the status of the consultation.

42.     Non-federal actors are similarly mandated and prohibited from taking listed species without authorization and review by the designated federal wildlife agency enforcing the ESA. The ESA Section 9 prohibitions are interpreted as broadly and to be as all encompassing as necessary so as to achieve the purposes of this Act in insuring that listed endangered species are not to be threatened by extinction and will be able to recover their populations to a non-endangered status.

Case 1:19-cv-10639-IT    Document 1    Filed 04/04/19    Page 11 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* **(D. Mass 2019)**                11

43.      The ESA imposes a non-discretionary obligation on state and private actors to apply for an ESA Section 10 incidental take permit if they engage in any activity that will physically interact or affect a member of an ESA listed endangered species. This is triggered by the fact that a taking is broadly interpreted by ESA Section 9 to be any level of unintended physical interaction with a listed endangered species. The ESA supervising federal agency will first informally review whether or not there is any need for the applicant to seek and be issued an ITP. If it determines that the activity in question poses a significant threat to take a listed species, it will order the initiation of a formal ITP process by the applicant.

44.      It is an incontrovertible fact that VBR required for use by the State Defendants in the marine fisheries they license repeatedly entangle, kill and injure Right Whales and all other Endangered Whales. The ESA pursuant to Sections 9 & 10 requires that state governments — whose licensing activities that reasonably threaten to routinely incidentally take listed species of wildlife — apply for an incidental take permit before continuing to engage in those activities from federal wildlife agencies that are tasked to oversee enforcement of the ESA.

### Background on Examples of ESA Listed Endangered Species of Whales and Sea Turtles that are Adversely Affected by Commercial Fishing

45.      Killing VBR Ropes are responsible for virtually all the historical entanglements of endangered whales and sea turtles by lobster/crab pot gear deployed along the US coastline. The Court has previously ruled that the State Defendants licensing of lobster pot gear entangles endangered whales and incidentally takes these listed species in violation of the ESA's Section 9 take prohibitions. *Strahan v. Coxe* has since been repeatedly cited by federal courts as controlling precedent. It is being used as controlling precedent by parties in a current federal lawsuit against the California state-licensed Dungeness Crab pot fishery. This commercial marine fishery also requires the use of VBR. It is also violating the ESA's Section 9 by entangling endangered whales in California state waters.

46.      It is incontrovertible that the deployment of Killing Ropes in the coastal marine habitat of whales and sea turtles is on its own a categorical violation of the ESA's Section 9 prohibitions on the taking of these listed species. Over a hundred thousand Killing Ropes are annually deployed by fishermen licensed by the State Defendants for months at a time off the Massachusetts coast. These killing ropes are deployed in the coastal marine habitat of large whales and sea turtles. Every year, many Endangered Whales and Sea Turtles are routinely

Case 1:19-cv-10639-IT Document 1 Filed 04/04/19 Page 12 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (D. Mass 2019)

12

entangled, killed and/or injured from their encounter with VBR deployed in Massachusetts waters. Each of the Killing Ropes required to be deployed by the State Defendants' possess a significant risk to entangle, kill, and otherwise seriously injure large whales and sea turtles on any day of the year in Massachusetts coastal waters.

47.     MAX refuses to use VBR in his lobster pot fishing equipment anymore. He is refusing to use Killing Ropes in order to prevent the entanglement of any Endangered Whale or Sea Turtle in his deployed lobster pot gear. Upon information and belief, he knows that every VBR in Massachusetts waters poses a significant risk to entangle and Endangered Whale or Sea Turtle inhabiting the area on any given day of the year.

48.     The Right Whale as a species is now effectively EXTINCT. Right Whales no longer give birth in the numbers required to support the survival of their species. Last year, there was zero births from all Right Whales. This is a result of female Right Whales being repeatedly and unrelenting killed and seriously injury by the said Killing Ropes deployed under permit from the State Defendants. Only an immediate cessation of any further entanglement of Right Whales in Massachusetts waters will provide any reasonable chance for the Right Whale species continued survival on the Earth.

49.     MAX is a conservation scientist petitioning the Court to ruthlessly enforce the "take prohibitions" imposed by Section 9 the Endangered Species Act against all the Defendants to stop their killing and injuring any more Endangered Whales and Sea Turtles from their deployment of killing ropes in Massachusetts coastalwaters. The State Defendant are categorically violating the ESA's Section 9 take  prohibitions by requiring that thousand plus fishermen that they license to use VBR  when they go lobster pot fishing in United States coastal waters. Endangered Whales and Sea Turtles are year round inhabitants of US coastal waters under the concurrent jurisdiction of Massachusetts. Endangered Whale species include the Northern Right Whales and other species of whales **FN6.** Endangered Sea Turtles species includes Green Turtles and other species of Sea Turtles. **FN7** All of these Endangered Species

---

[6] The Endangered Whales includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Right Whale, *Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

7 The Endangered Sea Turtles include: (1) The Green turtle, *Chelonia mydas*,; (2) Loggerhead turtle, *Caretta caretta*,; (3) The  Olive Ridley turtle, *Lepidochelys olivacea*; (4) The Hawksbill

are recognized as native resident species of Massachusetts. Massachusetts own endangered species Act ("MESA") prohibits the State Defendants from killing or injuring these endangered animals by requiring the use of VBR.

50.     Endangered Whales and Sea Turtles are resident species of the "Urban Sea" that exists along the northeast coastline of the United States. The Urban Sea consists of the harbors, bays, and inlets of the peri-urban coastal waters under the concurrent state jurisdiction of Maine, New Hampshire, Massachusetts and the other New England states and all federal waters out to the 200-mile ECZ boundary. In the Urban Sea, the Endangered Whales and Sea Turtles are routine killed, injured and their reproduction impaired by commercial and recreational anthropogenic activities. These anthropogenic activities include in part commercial fishing, vessel traffic and harbor operations, chemical pollution, disposal of plastic debris, and noise pollution ("Anthropogenic Threats").

51.     The Right Whales viability as a species has been eviscerated by the Anthropogenic Threats occurring in the Urban Sea of the United States and especially by the commercial activities licensed and regulated by the Defendants MDMF and its supra agency MEOEEA ("State Defendants"). The State Defendants are acting in concert with Defendant Center for Coastal Studies and the other commercial defendants to annually cause the deployment of veritable "mine fields" constituting thousands of Vertical Buoy Ropes ("Killing Rope Fields") that act like "fly paper" to entangle and kill and Right Whale, Sea Turtles and members of other species of whales — especially Humpback Whales — that come to swim through them. Individual Right Whales are repeatedly entangled by the Defendants licensed fishing gear in the Killing Fields of lobster/crab pots and gill nets. As a result they are seriously injured and killed as a result of these entanglements. Additionally, the ability of female Right Whales to breed is being adversely impaired from the repeated injuries inflicted on them by these entanglements and the adverse impact of the establishing of Killing Fields off the Massachusetts coast by the commercial defendants.

52.     The Right Whale's remaining population is no longer viable. Right Whales reproduction capability as a species has collapsed under the burden of the Anthropogenic

---

turtle, *Eretmochelys imbricate*; (5) The Kemp's Ridley turtle, *Lepidochelys kempii*; and (6) The Leatherback turtle, *Dermochelys coriacea*.

Threats. Right Whales did not give birth to any young in 2018. Over the last ten years, Right Whales births have not replaced the Right Whales killed by Anthropogenic Threats and natural mortality. The Right Whales are effectively extinct unless all VBR Fields are eliminated and pro-active efforts commenced to increase their annual production of newborn calves.

53. The Defendants are now conspiring to commit "Whale Fraud." The Defendants are maliciously acting in concert to deliberately prevent the enforcement of federal and state environmental laws at the intensity necessary to protect Right Whales and other endangered marine wildlife from being routinely killed and otherwise injured by VBR. They want as a categorical imperative to prevent any environmental laws from being enforced against the commercial fishing industry. Amazingly the Defendants have adopted a strategic practice to encourage the extinction of the Right Whale as its resolution to the legal conflict of its VBRs killing Endangered Whales and Sea Turtles.

54. The fact of the Defendants Whale Fraud is factually supported by the fact that the State Defendants were found liable by the Court in 1996 for violating the ESA's Section 9 prohibitions by their killing and injuring Endangered Whale Species through their licensing and regulating commercial fishing using VBR Fields. Instead of changing their ways after the Court's ruling, the Defendants chose to double-down on their illegal activities by use of fraud and force. They solicited the services of non-profit companies (e. g. the Center for Coastal Studies in Provincetown MA) to feign ineffective alterations of their illicit activities as reducing the incidents of Right Whales and Humpback Whales being killed and injured by their commercial fishing activities on Right Whale survival

55. The Northern Right Whale is the world's most critically endangered large whale species and also one of the world's most endangered mammals. Northern Right Whale's essential marine habitat is within the 200 mile ECZ of mostly the US but extends northwards into Canada. They live in the "urban sea" of the United States. Their coastal marine habitat is no longer marine wilderness from having so hugely been adversely impact from commercial development of area within 100 miles inland of the US coast that spills outward to the Ocean. The Northern Right Whale living along the US coastline is more akin to a moose trying to live in a suburb of an eastern city like Boston or Concord NH. Not a good situation.

56.     Right whales migrate annually from their summer feeding grounds off the
Northeast coast of the United States to their winter breeding grounds off the Southeast coast.
Females typically reach sexually majority at age nine or ten and give birth to a single calf. The
gestation period lasts roughly one year. From 2005 to 2014, the average right whale calving
interval (i.e. the amount of time between the birth of a right whale calf and a subsequent calf
from the same mother) ranged from three to five years. The average right whale calving interval
has increased every year since 2014, to a high of 10 years in 2017.

57.     Right whales have raised patches of roughened skin on their heads, known as
callosities. These callosities are found only on right whales and, like human fingerprints, have
distinctive patterns that enable scientists to individually identify right whales. The callosities are
covered by barnacles and tiny crustaceans known as whale lice.

58.     Upon information and belief, in recent years the incidents of entanglements in the
Defendants lobster pot gear and gill nets have increased for Endangered Whales and Sea Turtles.
This is because there has been an explosion in the population of Amerikan Lobsters off the US
northeastern coast coincident with an increase in the consumer market for lobster. Now more
commercial fishermen are deploying more commercial fishing gear due to the greater market
demand and the larger lobster population that can meet this demand. It is important to note that
there are more lobsters because their main predator — the Cod fish — was recently wiped out by
overfishing authorized and encouraged by the State Defendants.

59.     The bottom line is that the Right Whale is now effectively EXTINCT. This is
largely due to its being killed and injured by unlawful takings incidental to the lobster pot and
gill net fisheries licensed and regulated by the State Defendants.

Case 1:19-cv-10639-IT Document 1 Filed 04/04/19 Page 16 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* **(D. Mass 2019)** 16

## Plaintiff's Claims Against the Defendants

COUNT I: *Defendants Violation of 16 USC § 1538(a): The Defendants Violation of the ESA Section 9(a) Prohibitions Against the Incidental Taking of Endangered Species of Whales and Sea Turtles Occurring as a Direct Result of their Respective Individual Commercial Fishing Operations FN8*

60.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 59.

61.     The State Defendants are licensing and regulating all commercial fishing operation off the Atlantic coastline in waters under the concurrent state jurisdiction of the state of Massachusetts. These Defendants — require only by regulation and not by statute — that the Public it licenses to do lobster/crab pot fishing must use Killing Ropes. As stated, Killing Ropes are responsible for nearly all the entanglements of Endangered Whales and Sea Turtles in fishing gear licensed and regulated by the State Defendants. The VBR now deployed in Massachusetts coastal waters under license and regulation by the State Defendants annually and repeatedly entangle many Endangered Whales and Sea Turtles. These ongoing and routine entanglements have annually occurred since 1996. This is after the Court first ruled in *Strahan v, Coxe* that these said entanglements by the State Defendants were a violation of the ESA Section 9 prohibition against taking ESA listed endangered species of wildlife.

62.     The State Defendants current regulation requiring that licensed fishermen doing lobster/crab pot fishing is by itself a repeating violation of the ESA's Section 9 take prohibitions.

63.     It is a categorical violation of the ESA's Section 9 take prohibitions for anyone to deploy VBR and gill nets in marine habitat historically used by Endangered Whales and Sea Turtles. Only when the deployment can be guaranteed to occur without the presence of Endangered Whales and Sea Turtles is it possible to construe VBR as not categorically violating ESA Section 9 take prohibitions. Putting Killing Ropes in habitat occupied by whales is just like

---

[8] **ESA Section 9(a):**[l]t is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; (D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C); ... or (G) violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

pouring cyanide in the water. Since it cannot be removed immediately when an endangered whale or sea turtle unexpectedly shows up, the deployment cannot be lawfully done in the first place. This reality is enforced by two incontrovertible facts. If a whale touches a Killing Rope this results in entanglement. Endangered Whales and Sea Turtles are attracted to and readily interact with VB.

64.     These Defendants are all maliciously acting in concert in their unique and separate capacities to violate the ESA Section 9(a) through the incidental and unlawful taking of Endangered Species of Whales and Sea Turtles in US coastal waters. Federal courts have repeatedly held federal agencies liable for violating the ESA's Section prohibitions when their agency actions expectedly and routinely cause commercial development in ecosystems utilized by ESA listed species and that results in the unlawful taking of these species in violation of the ESA Section 9(a) prohibitions. **FN9**

65.     The Commercial Defendants MLA etc. and MLA's individual members are violating the ESA Sections 9 prohibitions by deploying lobster pot gear in US coastal waters that incidentally entangles Endangered Whales and Sea Turtles in a routine and continuous manner since 1973. These Killing Ropes are deployed in large numbers over a small area. They literally form a "minefield" of certain injury for any large whale attempting to swim through them. A fishermen will deploy 80 Killing Ropes in a small area. Right Whales and Endangered Turtles are attracted to these Killing Ropes and their attached buoys. In fact all manner of marine wildlife are attracted to the Killing Ropes and their attached buoys which are basically seen by marine wildlife as flotsam and jetsam to be used as shelter and play. Many Endangered Sea Turtles routinely become entangled in Killing Ropes licensed and regulated by the State defendants and Deployed by the Commercial Defendants.

66.     The Defendants have never been issue any ESA Section 10 incidental take permit to authorize any incidental taking by them of Endangered Whales and Sea Turtles in the commercial fishing gear that they license and regulate to be deployed in US coastal waters under the concurrent state jurisdiction of Massachusetts..

---

[9] See also *Florida Key Deer v. Paulison*, 522 F.3d 1133 (11 Cir. 2008) and *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (Dist. FL 1994) (Federal Emergency Management Agency violates ESA §§ 9 and 7 for its authorizing, regulating, and funding commercial development in habitat of ESA listed endangered deer species).

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 18 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* **(D. Mass 2019)**                    18

67.     The Defendant CCS and its employees are acting in concert with both the State and Commercial Defendants to maliciously aid them in unlawfully evading the enforcement of the ESA's Section 9 taking prohibitions so as to be able to continue using Killing Ropes and therefore to continue entangling, killing and injuring Endangered Whales and Sea Turtles. The CCS is employed by the State Defendants and is their official agent. They were hired to maliciously fabricate evidence and expert opinion to fraudulently deflect Public opinion and the courts from holding the Defendants liable for the killing and injuring of Endangered Whales and Sea Turtles in Killing Ropes. For this and more the Defendant CCS is in violation of the ESA Section 9 prohibitions for taking Endangered Whales and Sea Turtles.

68.     The Defendants will continue their said ESA Section 9(a) prohibited taking of Endangered Species of Whales and Sea Turtles into the future unless ordered to stop by the Court.

COUNT II:     *Defendants Violation of 16 USC § 1538(a): The Defendants Violation of the ESA Section 9(a) Prohibitions Against the Adverse Alteration of Designated Critical Habitat for the Right Whale.*

69.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 68.

70.     The Massachusetts Defendants (i. e. MEOEEA, and the MDMF) are licensing and regulating commercial fishing operation off the Atlantic coastline in waters under the concurrent state jurisdiction of the state of Massachusetts. The deployment of VBR/buoy is a categorical violation of the take prohibitions. Its just like pouring cyanide in the water. Its accepted that if a whale touches it will become entangled as a matter of physical law. **FN10**

71.     The Defendants will continue their said ESA Section 9(a) prohibited taking and unlawful alteration of the listed designated critical habitat of the Right Whale.

---

[10] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency). See also *Florida Key Deer v. Paulison*, 522 F.3d 1133 (11 Cir. 2008) and *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (Dist. FL. 1994) (Federal Emergency Management Agency violates ESA §§ 9 and 7 for its authorizing, regulating, and funding commercial development in habitat of ESA listed endangered deer species).

COUNT III: *Defendants Violation of 42 USC § 1983): The Defendants Violation of the Civil Rights Act: The Retaliation Against Me for Petitioning the Courts by Refusing me Access to Public Information, Gagging State Employees for Talking to Me, and Refusing to Accept My Petitions for Regulatory Reform.*

72. The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 71.

73. The State Defendants and Defendant CCS as a state actor are violating the Plaintiff's First Amendment protected right to petition the Court and Free Speech. These Defendants have intimidated and coerced state employees from talking and otherwise communicating with the Plaintiff on any issue. They have deliberately and maliciously denied the Plaintiff access to Public records in order to deter him from being able to petition the Court and prosecute them and others who have violated the provisions of the ESA.

## The Plaintiff's Supplemental Claims Against the Defend

COUNT III: *Defendants Sawyer, MLA and CCS are Public Nuisances and Have Caused Millions of Dollars of Injury to the Plaintiff Apart from How They Injured Other Members of the Public.* **FN11**

73. The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 71.

74. The said Defendants have for decades conducted themselves to deliberately and negligently injure the interests of the Plaintiff in his enjoyment and efforts to continue the survival of the Northern Right Whale. It will take millions of dollars for the Plaintiff to accomplish the return the Right Whale to the biological status that it would have if it were not repeatedly killed, injured and entangled by the actions of the Defendants. These Defendant have conducted himself as a Public nuisance.

---

ⁱⁱ See *Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court,* 448 Mass. at 34–35 & *Planned Parenthood League of Mass., Inc. v. Operation Rescue,* 406 Mass. 701, 707 (1990) (valid case for public nuisance where the defendant had interfered with the rights of the plaintiff's patients to obtain abortion).

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 20 of 21

**4 April 2019 Complaint:** *Strahan v. Mass. EOE&EA, et al.* **(D. Mass 2019)**                    20

## PRAYER FOR RELIEF

I.      For a Declaratory Judgment that the State Defendants are violating the ESA's Section
        9(a) prohibitions by incidentally taking members of Endangered Species of Whales and
        Sea Turtles off the US coast pursuant to their respective licensing and regulating
        commercial fishing operations in United States coastal waters under the concurrent state
        jurisdiction of Massachusetts.

II.     For a Declaratory Judgment that the Defendants are violating the ESA's Section 9(a)
        prohibitions by incidentally taking members of Endangered Species of Whales and Sea
        Turtles off the US coast pursuant to their respective commercial fishing operations owing
        to their use of Vertical Buoy Ropes in lobster pot fishing gear and in Gill nets.

III.    For an order, enjoining the MLA Defendants from engaging in further Lobster Pot and
        Gill Net commercial fisheries operations that could result in the entanglement of any
        Endangered Whale and Sea Turtle and enjoining the Government Defendants from
        licensing said commercial fisheries operations unless they can scientifically demonstrate
        that these acts will not result in the killing and/or injuring of individuals of said
        endangered species.

IV.     For an order, forcing the State Defendants to fully and adequately comply with their
        mandatory and non-discretionary duties imposed on them by ESA Section 9 in regards to
        any possible adverse impact on Endangered Whales and Sea Turtles from their  licensing
        and regulating in concert the deployment of VBR used in Pot Gear and Gill Nets in US
        coastal waters, and over any adopted policy and practice for enforcing the ESA Section 9
        prohibitions against individuals incidentally taking Endangered Whales and Sea Turtles
        from entanglement in their fishing gear.

V.      For an award of 1,000,000 in compensatory relief from Defendants Sawyer, MLA and
        CCS.

VI.     For an award of $1,000,000 in punitive damages from Defendants Sawyer, MLA and
        CCS.

V.      For an award of the Plaintiff's direct costs of his prosecution against the Defendants.

VI.     For any further relief that the Court deems appropriate.

Case 1:19-cv-10639-IT   Document 1   Filed 04/04/19   Page 21 of 21

4 April 2019 Complaint: *Strahan v. Mass. EOE&EA, et al.* (**D. Mass 2019**)          21

BY:

    /s/ Richard Maximus Strahan

    Richard Maximus Strahan
    POB 82
    Peterborough NH 03458
    esistoo@yahoo.com
    617-817-4402

    *Pro Se and Proud!*

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 26° day of March in the year 2018.

    /s/ Richard Maximus Strahan