UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD MAXIMUS STRAHAN,

        Plaintiff,

v.

SECRETARY, MASSACHUSETTS
OFFICE OF ENERGY AND
ENVIRONMENTAL AFFAIRS
("MEOEEA");

DIRECTOR, MASSACHUSETTS
DIVISION OF MARINE FISHERIES
("MDMF");

ARTHUR SAWYER, as president of
the MASSACHUSETTS
LOBSTERMEN'S ASSOCIATION ;

CENTER FOR COASTAL STUDIES;
and

JOHN HAVILAND

        Defendants.

CIVIL ACTION 1:19-cv-10639-IT

**<u>OPPOSITION OF MASSACHUSETTS DEFENDANTS
TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

<u>Introduction</u>

Plaintiff Richard Maximus Strahan, who is self-represented, brings this

action, pursuant to 16 U.S.C. § 1540(g)(2), alleging, among other claims, that

defendant Massachusetts Division of Marine Fisheries' licensing of lobster pot fishing using "vertical buoy ropes"[1] in Massachusetts coastal waters "takes" the North Atlantic right whale ("right whale") in violation of section 9 of the Endangered Species Act, 16 U.S.C. § 1538.[2]  Before the Court is Strahan's motion for a temporary restraining order[3] against Defendants Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs, and the Director of the Massachusetts Division of Marine Fisheries (collectively, "Massachusetts Defendants").  The Court (Casper, J.) considered, and denied, a similar motion brought by Strahan against the Massachusetts Defendants in 2018.

---

1   Strahan's use of the term vertical buoy ropes or "VBR" refers to "positively buoyant line," which is defined by Massachusetts regulation to mean "line that has a specific gravity less than that of seawater, 1.03, and floats up in the water column."  322 Code Mass. Regs. 12.02 (2019).

2   Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44.  Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).  The North Atlantic right whale (*Eubalaena glacialis*) ("right whale") is an "endangered species."  50 CFR §§ 17.11, 224.101.  The ESA prohibits a "take" by, *inter alia*, the killing or harming of an endangered species. 16 U.S.C. § 1538.

3   While styled a motion for temporary restraining order, it is a motion for preliminary injunctive relief on an expedited basis.  A temporary restraining order is authorized under Fed. R. Civ. P. 65 and expires within 14 days after entry.  Here, Strahan seeks relief for more than 14 days.

Strahan v. Massachusetts, U.S.D.C. (D. Mass.), No. 1:18-cv-10392-DC, Electronic Order (Doc. # 56).[4]   This Court must also deny Strahan's instant motion.

Specifically, Strahan moves for an order to prevent the Massachusetts Defendants from authorizing deployment of lobster fishing gear utilizing vertical buoy ropes into federally designated critical habitat for the right whale in Massachusetts coastal waters[5] until June 1, 2019, or until the Massachusetts Defendants can "scientifically prove" that no right whales are in or are likely to return to critical habitat in Massachusetts waters "in the immediate future." Plaintiff's Emergency Application for a Temporary Restraining Order (Doc. # 14) at p. 2 of 7.   Strahan further requests that this Court issue an order enjoining the

---

[4]   This action is the most recent iteration of Strahan's ESA-related claims against Massachusetts Defendants.  Strahan voluntarily dismissed last year's case. Strahan, No. 1:18-cv-10392-DC, Doc. # 95.  Earlier cases include:  Strahan v. Diodati, 755 F.Supp.2d 318, 325 (D. Mass. 2010) (Court awarded summary judgment for Massachusetts Defendants); Strahan v. Pritchard, 473 F.Supp.2d 230 (D. Mass. 2007) (Court denied Strahan's motion for preliminary injunction and stayed case for two years before dismissing it); Strahan v. Coxe, U.S.D.C. (D. Mass.), No. 1:95-cv-10927-DPW, Docs. 434, 435, 436, 438 (Court granted Strahan's motion for preliminary injunction, but later dismissed Strahan's claims, with prejudice, upon Strahan's motion to dismiss).

[5]   Strahan refers to the geographic area designated as critical habitat for right whales pursuant to 50 C.F.R. § 226.203, reduced to that portion under the control of the Massachusetts Defendants or, alternatively, that portion known as Cape Cod Bay.  See TRO Motion at p. 4 n.6.  The "critical habitat" area is larger than the restricted area currently subject to fixed-gear closure pursuant to federal and state regulations.  See Declaration of Daniel J. McKiernan, Deputy Director of the Division of Marine Fisheries ("McKiernan Dec."), ¶ 10, and infra n. 7.

Massachusetts Defendants from requiring him to use vertical buoys ropes when he deploys lobster pot gear under a Massachusetts-issued license. Id. Strahan's requested relief largely mirrors the final declaratory relief he seeks in this action. See Complaint (Doc. # 1).

The motion must be denied because Strahan has not demonstrated a likelihood of success on the merits or made a showing of irreparable harm absent the relief he seeks. Indeed, in addition to multiple measures the Massachusetts Defendants have taken to prevent lobster fishing gear entanglements, a large area of right whale critical habitat in Massachusetts waters is already closed to lobster pot fishing and will remain closed until at least May 8, 2019, or later if a significant aggregation of right whales still remains in Cape Cod Bay. While Strahan's concern for the whales is long-standing and commendable, the balance of equities does not favor Strahan nor would an injunction benefit the public interest considering the management measures in place to protect right whales and the demonstrated public interest in lobster pot fishing. Moreover, Strahan, who claims to be a lobster pot fisherman, is not licensed to fish in Massachusetts.

Factual Background

The Commonwealth's Division of Marine Fisheries has the comprehensive authority and responsibility under Massachusetts law to regulate, manage and protect the Commonwealth's commercial and recreational marine fisheries

resources. Submitted herewith is the Declaration of Daniel J. McKiernan, Deputy Director of the Division of Marine Fisheries ("McKiernan Dec."), which sets forth an overview of that regulation and factual background pertinent to this matter.

## ARGUMENT

Standard of Review

A preliminary injunction (or temporary restraining order) is "an extraordinary remedy never awarded as of right" but only in the exercise of the trial court's "sound discretion." Winter v. National Res. Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 376 (2008). The moving party has the "burden of satisfying" the test for relief. Lancor v. Lebanon Hous. Auth., 760 F.2d 361, 363 (1st Cir. 1985).

The Court considers four factors when reviewing a TRO motion: (1) Strahan's likelihood of success on the merits of his claims; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of hardship to the parties; and (4) the public interest. Animal Welfare Inst. v. Martin, 623 F.3d 19, 26 (1st Cir. 2010). Likelihood of success on the merits is the most critical factor in the inquiry. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "Where the interim relief sought by the plaintiff is essentially the final relief sought, 'the likelihood of success [on the merits] should be strong.'" Strahan v. Pritchard, 473 F. Supp. 2d 230, 235 (D. Mass. 2007) (quoting In re Pye,

5

37 F.3d 58, 63 (1st Cir. 1994)).  The balancing and public interest prongs "'tip[] heavily in favor of protected species.'" Strahan v. Coxe, 127 F.3d 155, 160 (1st Cir. 1997) (quoting Nat'l Wildlife Fed'n v. Burlington N.R.R., 23 F.3d 1508, 1510 (9th Cir. 1994)).  Applying this standard to the present action, Strahan's TRO motion must be denied.

> **I.    THIS COURT MUST DENY STRAHAN'S REQUEST FOR A PRELIMINARY ORDER BECAUSE MUCH OF THE RELIEF HE SEEKS IS ALREADY IN PLACE AND HE HAS FAILED TO DEMOSTRATE LIKELIHOOD OF SUCCESS OR IRREPRABALE HARM.**
>
> **1.    Strahan has Failed to Demonstrate a Likelihood of Success on the Merits.**
>
> *A.  The record does not support Strahan's allegations that the Massachusetts Defendants 'continue to kill and injure whales.'*

The ESA prohibits the "taking" of an endangered species, with "taking" defined "in the broadest possible manner to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife." Strahan v. Roughead, 910 F. Supp. 2d 358, 366 (D. Mass. 2012) (quoting S. Rep. No. 93-307, at 7 (1973)); see 16 U.S.C. §§ 1532, 1538.  Entanglement of right whales in fishing gear, including lobster pot gear deployed with vertical buoys ropes, may constitute a "take" under the ESA.  See Coxe, 939 F. Supp. at 984.  Nothing in that historical decision or any case law, however, requires this Court to hold that the mere licensing or use of fishing gear utilizing vertical buoys ropes in Massachusetts

6

coastal waters designated a critical habitat for the right whale, without more, constitutes a "take."  See Pritchard, 473 F.Supp.2d 230 (denying injunctive relief on nearly identical claim).  Indeed, to obtain injunctive relief against a taking, a "plaintiff must show actual harm or harassment." Id. at 235.  Strahan fails to meet his heavy burden to demonstrate a likelihood of success on the merits.

Strahan alleges, without adequate support, that the Massachusetts Defendants, since 1996, have "continued to kill and injure endangered whales" by requiring use of vertical buoy ropes during lawful fishing activity.  Plaintiff's Memorandum of Facts and Law Supporting His Emergency Request for a TRO Against the State Defendants at 2; see also Declaration of Richard Maximus Strahan ("Strahan Dec.") at ¶ 5 ("In 2019 as in 1996, Northern Right Whales are routinely killed and injured by Massachusetts state lobster fisheries operations."). The only support Strahan provides for his allegations of routine and continuous entanglement is a nearly ten-year-old report on large whale entanglements in Massachusetts-licensed gear.  Strahan Dec., Exhibit 2.  That report describes two whale entanglements (one involving a right whale, the other involving a humpback whale), both of which the Provincetown Center for Coastal Studies resolved immediately and successfully by disentangling the whales.  Id.  Furthermore, in the intervening decade, the Massachusetts Defendants know of only one entanglement

7

from gear set in Massachusetts, when a whale was found entangled in 2016 and was successfully disentangled. McKiernan Dec., ¶ 22.

Last year, this Court (Casper, J.) held that that Strahan had not made a strong showing of likelihood of success on the merits of his claim that Massachusetts' authorization of the use of fishing gear utilizing vertical buoy ropes violates 16 U.S.C. §1538. Strahan has not provided any new or additional facts or information to support his present request for preliminary injunctive relief. This Court should also conclude, as did Judge Casper, that Strahan has not made a strong showing and therefore he has not demonstrated a sufficient likelihood of success on the merits to warrant the relief he now seeks.

Nor has Strahan demonstrated that right whales are likely to be taken by Massachusetts lobster gear in the future, particularly in light of the regulatory steps the Massachusetts Defendants have already taken to reduce interactions between right whales and lobster pots and gear utilizing vertical buoy ropes. Indeed, much of the relief Strahan seeks is already in place. Massachusetts waters where right whales are currently congregating to feed on zooplankton are subject to an annual three-month closure. McKiernan Dec., ¶ 14. That closure was scheduled to end on April 30. But, on Thursday, April 25, 2019, during a survey of Cape Cod Bay, 57 right whales were observed, with all of these whales subsurface and skim feeding.

Id., ¶ 21.[6]  In response to this significant aggregation of right whales, the Division of Marine Fisheries has extended the fixed fishing gear closure in Cape Cod Bay pursuant to its authority under 322 Code Mass. Regs. 12.04(3) through May 8, 2019.  Id.  Pursuant to its authority under 322 Code Mass. Regs. 12.04(5), it has also extended the speed restriction of ten knots applicable to all vessels measuring less than 65 feet in overall length operating within Cape Cod Bay through May 8, 2019.  Id.  In the event that a significant aggregation of right whales still remain in Cape Cod Bay on May 8, it intends to extend the closure again as it deems reasonably necessary to protect such right whales.  Id.  This is a large portion of the northern right whale's federally designated critical habitat in Massachusetts coastal waters—encompassing all of Cape Cod Bay and areas around Cape Cod north to Stellwagen Bank and extending south to the waters off Nantucket.[7]  On or

---

[6]  Under contract for the Massachusetts Division of Marine Fisheries, trained marine biologists from the Provincetown Center for Coastal Studies document the presence of right whales by aerial surveys performed by thorough airplane flyovers of the closure area.  McKiernan Dec., ¶ 17.

[7]  Under the Marine Mammal Protection Act of 1972, 16 U.S.C. §§ 1361-1423h, regulations to conserve marine mammals, including the right whale, first became effective on November 15, 1997, and are promulgated at 50 C.F.R. §229.32 (Atlantic large whale take reduction plan regulations).  The purpose of the regulations is to reduce incidental mortality and serious injury to right whales and other whales in specific commercial fisheries.  50 C.F.R. § 229.32(a)(1).  There is a Massachusetts restricted area described by the regulation within which, from February 1 to April 30, it is prohibited to fish with, set, or possess trap/pot gear.  Id., § 229.32(c)(3)(ii).  As explained in this Opposition, a more robust closure regime is established by Massachusetts regulation.  McKiernan Dec., ¶¶ 12-22.

before May 8, the Director of the Massachusetts Division of Marine Fisheries will decide, based on then-current data on the location of right whales, whether to further extend the closure under state law. McKiernan Dec., ¶¶ 15, 21, 25; 322 Code Mass. Regs. 12.04(3) (authority to extend closure). If an extension is found to be appropriate, it will be accomplished, without the need for a federal court order.

> B. *Strahan has not met his burden because he has not addressed the Massachusetts Defendants' cooperative agreement for conservation of endangered marine species under the ESA.*

Strahan has taken the position that the Massachusetts Defendants can be held to be in violation of 16 U.S.C. § 1538(a) because of state regulation authorizing use of vertical buoy ropes in state waters. See Complaint, Count I (alleging violation of 16 U.S.C. § 1538(a)). Missing from Strahan's presentation is any articulation of how the Court could draw that conclusion in light of pertinent statutory language and the existing ESA-sanctioned limited cooperative agreement between the United States and Massachusetts, which is in effect until September 2019. McKiernan Dec., ¶ 11.

Under 16 U.S.C. § 1538, Congress has enacted exceptions relevant to states with cooperative agreements in place with the federal government. Congress

---

Under both federal and state requirements, the closure area is contained within the larger "critical habitat" for right whales designed by 50 C.F.R. § 226.203 (effective Feb. 26, 2016).

authorized cooperative agreements with any State "which establishes and maintains an adequate and active program for the conservation of endangered species and threatened species." 16 U.S.C. § 1535(c).  These cooperative agreements are entered into between a state and the National Oceanic and Atmospheric Administration's National Marine Fisheries Service within the United States Department of Commerce, which has primary responsibility for administration of the ESA relative to marine species.  16 U.S.C. § 1532(15).

In pertinent part, the ESA provides: "<u>Except as provided in sections 1535(g)(2)</u> and 1539 of this title, with respect to an endangered species . . . it is unlawful … to take any such species[.]"  16 U.S.C. § 1538(a)(1) (emphasis added). Section 1535(g)(2) provides in turn: "The prohibitions set forth in or authorized pursuant to sections 1533(d) and 1538(a)(1)(B) of this title shall not apply" against a party to a cooperative agreement, unless an exception applies. 16 U.S.C. § 1535(g)(2)(A).  Neither Strahan's complaint nor his motion identifies an applicable exception for purposes of the application of §1535(g)(2)(A).[8]

Under the cooperative agreement, the National Marine Fisheries Service declared, as recently as September 27, 2018, that Massachusetts "continues to have an adequate and active program for the conservation of resident endangered

---

8    At this juncture, the Massachusetts Defendants have not exhausted their own research into whether an exception would apply.

species of fish and wildlife." McKiernan Dec., ¶ 11. Given that conclusion, Strahan will not be able to demonstrate in this action that Massachusetts' regulation of the fishing industry is incompatible with current ESA requirements.[9]

### 2. Strahan Has Not Made a Sufficient Showing of Irreparable Harm.

Strahan has not demonstrated that, absent an injunction, right whales will suffer irreparable harm. As explained in the McKiernan Declaration and explained last year to Judge Casper, the Massachusetts Defendants have promulgated a series of regulations designed to protect right whales and other marine species, including seasonal closure, requiring that gillnets and trap gear have breakaway features and limiting speeds and sizes of vessels in certain coastal waters. McKiernan Dec., ¶¶ 12-16; see 322 Code Mass. Regs. 12.00 et seq. Since then, further regulatory steps have been taken to protect right whales, even in the absence of evidence of entanglements of right whales in Massachusetts gear. Id., ¶ 15-16. The Massachusetts Defendants continue to use aerial and vessel-based population surveys to monitor coastal waters and to take actions as necessary. Id., ¶ 17, 21. In light of the lack of evidence that Massachusetts' authorization of vertical buoy

---

9   Strahan is suing the National Oceanic and Atmospheric Administration alleging that it is injuring and killing whales and sea turtles as a result of its licensing and regulating of commercial fishing in marine waters off the East Coast in violation of the ESA. Strahan v. NOAA, U.S.D.C. (N.H.), Civil Docket No. 1:18-cv-00752-LM. The defendants have moved to dismiss the case. The matter was stayed until May 20, 2019, at Strahan's request, while he pursues a Master of Arts degree from the University of New Hampshire. Id. at Doc. 29 (motion to stay).

ropes for fishing effort harms right whales, coupled with the evidence that Massachusetts Defendants are monitoring the whales in Massachusetts coastal waters, Strahan has not made a persuasive showing that right whales will suffer irreparable harm absent the injunctive relief Strahan presently seeks.

### 3. Balance of Equities and the Public Interest.

Strahan has not met his burden to show that the balance of equities favors an injunction or that the injunction would benefit the public interest. This Court has repeatedly recognized that the type of injunction requested by Strahan would be harmful to Massachusetts lobstermen. Electronic Order (Doc. # 56), Strahan v. Massachusetts, Case No. 1:18-cv-10392-DJC ("lobstermen will suffer harm if they are unable to set gear for the season"); Pritchard, 473 F.Supp.2d at 240 ("the requested injunction would be devastating to the livelihood of fishermen and to the survival of their communities"). While this Court has not heard from those parties in this particular action, there is no evidence drawing those conclusions into question. Given the comprehensive regulatory scheme in this area, managed by the Massachusetts Defendants and developed with the use of extensive data, as set forth in the McKiernan Declaration, this Court should conclude, as it did last year, that the extraordinary remedy that Strahan seeks is not warranted.

## II. STRAHAN'S REQUEST FOR A PRELIMINARY ORDER ENJOINING MASSACHUSETTS DEFENDANTS FROM REQUIRING HIM TO USE VERTICAL BUOY ROPES MUST BE DENIED BECAUSE HE IS NOT LICENSED TO FISH IN MASSACHUSETTS.

Strahan asks this Court to enjoin the Massachusetts Defendants from requiring him to comply with state regulations that require holders of a lobster permit to use vertical buoy ropes when they deploy lobster pot gear. This request must be denied, as it is premised on his factual assertion that he is authorized to deploy lobster pot gear in Massachusetts. See Complaint, ¶ 10 (identifying Strahan to be "licensed by the State Defendants to do lobster pot fishing in Massachusetts State waters.") He is not. McKiernan Dec., ¶ 6. Recently, Strahan applied for a Massachusetts license, but his application was returned to him as deficient, with a letter of explanation. Id. Under these circumstances, Strahan has failed to demonstrate a likelihood of success on the merits, the potential for irreparable harm if the injunction is denied, any hardship or any benefit to the public interest if the injunction is granted.

In the event Strahan obtains a Massachusetts license, the Commonwealth of Massachusetts has an interest in compelling compliance with its laws. Accordingly, the Massachusetts Defendants reserve the right to later address why Strahan's request should not be granted.

Conclusion

For the foregoing reasons, Strahan's motion must be denied.

          Respectfully submitted,

          MASSACHUSETTS EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS SECRETARY MATTHEW A. BEATON and MASSACHUSETTS DIVISION OF MARINE FISHERIES DIRECTOR DAVID E. PIERCE,

          By their attorney,

          MAURA HEALEY
          ATTORNEY GENERAL

          /s/ Maryanne Reynolds
          Maryanne Reynolds, BBO # 627127
          Assistant Attorney General
          Massachusetts Office of the Attorney General
          Government Bureau
          10 Mechanic Street, Suite 301
          Worcester, MA 01608
          Direct Dial:  (774) 214-4407
          Main Number:  (617) 727-2200
          maryanne.reynolds@state.ma.us

Dated:  April 26, 2019

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Maryanne Reynolds
Maryanne Reynolds, BBO # 627127

Dated:  April 26, 2019