UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MAX STRAHAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10639-IT |
| | * | |
| SECRETARY, MASSACHUSETTS EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS ("MEOEEA"), et al., | * * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 3, 2020

TALWANI, D.J.

Plaintiff Richard Strahan's Second Amended Complaint [#68] ("Complaint") alleges, inter alia, that Massachusetts has promulgated regulations that require fishermen to use equipment that can and do injure and kill right whales, in violation of the Endangered Species Act. Plaintiff has sued the Massachusetts Executive Office of Energy and Environmental Affairs ("MEOEEA") and David Pierce, director of the Massachusetts Division of Marine Fisheries ("Fisheries Division"). Plaintiff has also sued non-state defendants, namely the Center for Coastal Studies ("Coastal Studies"), John Haviland, Arthur Sawyer, and the Massachusetts Lobstermen Association ("MLA") (collectively, the non-State Defendants). Because the pleadings against the non-State Defendants fail to state a claim, Defendants Center for Coastal Studies, John Haviland, and Arthur Sawyer's Motions to Dismiss [#107], [#111], [#113] are ALLOWED. The court will address the remaining claims against the State Defendants in a separate memorandum and order.

## I. Factual Allegations as Set Forth in the Complaint[1]

The Complaint [#68] alleges as follows:

Plaintiff Richard Strahan is an avid whale watcher and researcher on sea turtles. Compl. ¶ 13 [#68]. He is the Chief Science Officer of Whale Safe USA, a campaign to make the United States coastline environmentally safe for endangered species of coastal whales and sea turtles. Id.

Defendant MEOEEA oversees the Fisheries Division, which has authority under Massachusetts law to "administer all the laws relating to marine fisheries" in the Commonwealth; Defendant David Pierce is the director of the Fisheries Division (Mr. Pierce and the MEOEEA are together referred to as the State Defendants). Mass. Gen. Laws ch. 130, §1A (2019); Compl. ¶ 14 [#68]. Plaintiff alleges that MEOEEA and Mr. Pierce are violating the Endangered Species Act, 16 U.S.C. § 1538, by requiring Massachusetts lobster fishermen to use Vertical Buoy Ropes ("VBRs") to identify and retrieve lobster traps. Compl. ¶¶ 64-89 [#68]. These ropes "repeatedly entangle, kill and injure right whales," which are protected by the Endangered Species Act. Id. ¶ 47 [#68]; 50 C.F.R. § 17.11. The State Defendants allegedly are responsible for the annual deployment of over 100,000 VBRs in Massachusetts state waters. Id. ¶ 70.

Defendant Coastal Studies is a Massachusetts corporation. Id. ¶¶ 19, 58. Plaintiff alleges that Coastal Studies is working with the State to impede the public from obtaining evidence about the entanglement of marine wildlife in three ways. Id. ¶ 9. First, Plaintiff alleges that the State Defendants provide Coastal Studies with exclusive access to the entangled whales once the State Defendants are notified of a possible entanglement. Id. Coastal Studies allegedly uses this

---

[1] For the purposes of this motion to dismiss, the court accepts the complaint's factual allegations as true. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d. 82, 84 (1st Cir. 2015).

early access to remove evidence associating the entanglement to state-licensed VBRs. Id. ¶ 88. Second, Plaintiff alleges that Coastal Studies worked with State Defendants to give the public the false impression that the State Defendants were reducing deaths and injuries to the right whale through new regulations and procedures. Id. ¶ 58. Finally, Plaintiff alleges that as part of Coastal Studies' contract with the State Defendants, Coastal Studies agreed that its employees would never testify to the entanglement or threat of entanglement of endangered whales in Massachusetts waters. Id. ¶ 84.

Defendant Arthur Sawyer is the chief executive officer of the MLA and is also an appointed member of the Massachusetts Marine Fisheries Advisory Commission ("MFAC").[2] The complaint alleges that MLA's support of the State Defendants has been key in allowing them "to maintain the *status quo* required use of VBR since 1973." Id. ¶ 83. The complaint also alleges that the MLA's individual members are violating § 1538 of the Endangered Species Act "by deploying lobster pot gear in US coastal waters that incidentally entangles Endangered Whales and Sea Turtles in a routine and continuous manner." Id. ¶ 86.

The only factual allegation in the Complaint [#68] regarding Defendant Haviland is a business address. See id. ¶ 18.

## II. Relevant Procedural Background

The Second Amended Complaint includes six counts:

- Counts I and II allege that the State Defendants, Coastal Studies, MLA, Sawyer, and Haviland violated § 1538(a) of the Endangered Species Act, 16 U.S.C. § 1538;

---

[2] Plaintiff alleges that MFAC has "exclusive state regulatory authority over commercial fishing in Massachusetts waters." Compl. ¶ 8. However, MFAC is not otherwise mentioned in the complaint and therefore is not further discussed in this memorandum.

3

- Count III alleges that the State Defendants and Coastal Studies have violated Plaintiff's rights under the First Amendment of the federal Constitution and seeks redress under the Civil Rights Act, 42 U.S.C. § 1983;
- Count IV alleges violations of the Endangered Species Act by Vineyard Wind LLC and Baystate Wind LLC;[3]
- Count V alleges that Defendants Sawyer, Haviland, MLA, and Coastal Studies have engaged in conduct constituting a public nuisance under Massachusetts common law;
- Count VI alleges that Defendant Pierce has violated the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H.

Compl. ¶¶ 64-106.

Defendants Coastal Studies, Haviland, Sawyer, and the State Defendants filed Motions to Dismiss [#107], [#111], [#113], [#117]. After Plaintiff failed to timely respond to any of these motions, the court issued an Order to Show Cause [#127] for why Plaintiff's Complaint [#68] should not be dismissed given the lack of opposition to Defendants' motions.

Following the Order to Show Cause [#127], Plaintiff submitted eight filings in short succession. These filings included a Notice [#128] that he would be moving for leave to file an amended complaint; Oppositions [#129], [#130], [#133], [#134] to the pending motions to dismiss; a Response [#131] to the show cause order; a Motion for Hearing [#132] on the pending motions to dismiss; and a Motion for Discovery [#137] of Coastal Studies. Despite his Notice [#128] that he would be moving for leave to file an amended complaint, Plaintiff filed no such

---

[3] Vineyard Wind LLC and Baystate Wind LLC have not been summoned or served and the claims against them are thus not discussed as part of this memorandum and order.

motion.

On January 31, 2020, Plaintiff filed an <u>Emergency Motion for Temporary Restraining Order</u> [#145], seeking an order directing the State Defendants and Coastal Studies to produce all records relating to an entangled whale off the Massachusetts coast and a pod of whales in the vicinity. At the court's direction, <u>see</u> Elect. Order [#147], Plaintiff filed an amended version of the motion on February 2, 2020. <u>See</u> Pl's. Emerg. Mot. Temp. Restr. Order [#148].

### III. The Non-State Defendants Motions to Dismiss

To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." <u>Cardigan Mountain Sch.</u>, 787 F.3d at 84 (internal citations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. <u>Id.</u>

   1. <u>Count I: Violation of Endangered Species Act Sections 1538(a) and (g) by Coastal Studies and the MLA</u>

Count I includes two related sets of allegations. First, Count I alleges that the State Defendants violated §§ 1538(a) and (g) of the Act because licensing Massachusetts fishermen caused a taking of right whales. Second, and relevant to the discussion here, Count I alleges that Coastal Studies and MLA are acting in concert with the State Defendants to maliciously aid their evasion of the Act.[4]

---

[4] Although Defendants Haviland and Sawyer are listed in the header for Count I, <u>see</u> Compl. 18 [#68], the allegations in support of Count I do not provide any allegations related to these Defendants. <u>See id.</u> ¶¶ 64-89. In the absence of factual allegations supporting the claim,

5

Plaintiff claims that Coastal Studies and the MLA acted in concert with the State Defendants to violate the Act in different ways. Plaintiff alleges that Coastal Studies supported the State Defendants in "maintain[ing] the status quo required use of VBR since 1973" by "fabricat[ing] evidence and expert opinion to fraudulently deflect Public opinion and the courts from holding the Defendants liable for the killing and injuring of Endangered Whales . . . ." Compl. ¶¶ 83, 88 [#68]. As for MLA, Plaintiff alleges that its individual members are violating the Act by continuing to deploy lobsterpot gear using VBRs. Id. ¶ 86.

Taking Plaintiff's allegations against Coastal Studies as true, the activities that Plaintiff describes amount, at most, to acts in support or assistance of the State Defendants, the party actually alleged to be causing a prohibited "take" under the Act. While any person who "cause[s] [a taking] to be committed" may be liable under the Act, liability does not extend to those who aid or abet a taking. 16 U.S.C. § 1538(g). In Strahan v. Coxe, the First Circuit interpreted the causality language of § 1538(g) to be coterminous with the common law principles of causation: the Act "not only prohibits the acts of those parties that directly exact the taking, but also bans those acts of a third party that bring about the acts exacting a taking." Strahan v. Coxe, 127 F.3d 155, 163 (1st Cir. 1997). The court does not find that aiding and abetting or otherwise giving assistance to those who have exacted a taking falls within the bounds of the common law concept of causation. The Supreme Court's decision in Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), is instructive on this point. In Cent. Bank of Denver, the Supreme Court examined the reach of § 10(b) of the Securities Exchange Act of 1934, which makes it unlawful for any person to "directly or indirectly" engage in prohibited

---

Plaintiff's claims under Count I against Defendants Haviland and Sawyer must be dismissed for failure to state a claim.

6

securities transactions. The Court found that aiding and abetting a prohibited transaction did not fall under the "directly or indirectly" scope of § 10(b), because "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity," and "reaches persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do." Id. at 176. Furthermore, the Court noted, "if . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." Id. at 177. Here, the court similarly does not construe the Act as reaching beyond those who cause a taking to include those who merely provide aid. Accordingly, even taking the factual allegations as true, Plaintiff has failed to state a claim against Defendants Coastal Studies arising under the Act.

Plaintiff also claims that MLA is subject to liability under § 1538(g) based on the actions of its individual members. Compl. ¶ 86 [#68]. Taking as true Plaintiff's claims that "defendant MLA's individual members are violating the Act's § 1538 prohibitions," Plaintiff does not explain how the conduct of individual members creates liability for MLA under the Act. To the extent that Plaintiff relies on Strahan v. Coxe for the conclusion that state regulators may be liable under the Act, this rationale does not extend liability to MLA. As noted earlier, the First Circuit interprets the Act to extend to "governmental third parties pursuant to whose authority an actor directly exacts a taking of an endangered species." Strahan v. Coxe, 127 F.3d at 163. However, Plaintiff does not allege any facts that support the conclusion that the MLA, a non-governmental entity, has any regulatory authority over its members. Accordingly, the factual allegations related to MLA's conduct, even taken as true, do not support Plaintiff's legal conclusion that MLA has violated the Act. Thus, this claim is subject to dismissal.

7

### 2. Count III: Violation of 42 U.S.C. § 1983

Count III alleges that the "State Defendants and Defendant Coastal Studies as a state actor" have violated Plaintiff's federal Constitutional rights. However, all non-conclusory factual allegations relate to the conduct of the State Defendants, not Coastal Studies. See Compl. ¶¶ 93-98 [#68]. Accordingly, Plaintiff has failed to sufficiently plead a claim as to Coastal Studies in Count III.

### 3. Count V: Public Nuisance

Count V alleges that Defendants Sawyer, Haviland, MLA, and Coastal Studies are public nuisances under Massachusetts state law. The Massachusetts Supreme Judicial Court has stated that "[a] nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 448 Mass. 15, 34 (2006). However, "[a]n information in equity *by the Attorney General* is the normal remedy for the abatement of a public nuisance." Mayor of Cambridge v. Dean, 300 Mass. 174, 175 (1938) (emphasis added). Massachusetts law permits an exception to this general rule by allowing private plaintiffs to bring public nuisance claims in the rare circumstance where "the public nuisance has caused some special injury of a direct and substantial character other than that which the general public shares." Sullivan, 448 Mass. at 35 (internal citation omitted). In Sullivan, even plaintiffs who suffered the public harm to a greater degree than other individuals could not bring a public nuisance claim without a showing that their injury was unique, and not simply greater in magnitude. Id. at 36.

Taking all the plausible factual allegations as true, Plaintiff has not sufficiently pleaded a unique injury that would entitle him to bring a claim for public nuisance. While Plaintiff certainly has a particular interest in the enforcement of the Act, see Compl. ¶ 2, 13 [#368], this

special interest does not support the conclusion that Plaintiff has or will suffer "a special injury of a direct and substantial character" as required by Sullivan. 448 Mass. at 35. Instead, Plaintiff is equally situated to other Massachusetts residents who have an interest in the continued existence of the right whale and the enforcement of federal law. Without more, Plaintiff cannot proceed on a public nuisance claim.

Plaintiff's public nuisance claim also fails because an enterprise is generally not liable under a theory of public nuisance where it acts "in conformity with the licenses granted to it." Strachan v. Beacon Oil Co., 251 Mass. 479, 487 (1925). In Beacon Oil Co., neighbors of an oil refinery sued Beacon Oil due to odors and noise emanating from Beacon Oil's refinery. The court noted that the oil refinery was operating pursuant to an annual license and permit issued by state authorities. Citing extensive authority, the SJC wrote that it "is settled that under statutes similar to those under which the defendant was granted the licenses, if the licensee has complied in all respects with the terms, what he does thereunder cannot be considered a nuisance or be restrained, even if without such licenses the acts done would be a nuisance." Id. at 487. Plaintiff has made no allegations that Defendants have not "complied in all respects with the terms" of the licenses and permits they receive from the state. Id. Indeed, Plaintiff's complaint against the State Defendants is founded on the premise that lobstermen are being compelled to use VBRs by Massachusetts regulation. See Compl. ¶¶ 49, 53, 68. As a result, Plaintiff's public nuisance claim cannot prevail as a matter of law.

### IV. Plaintiff's Motions Relating to the Non-State Defendants

Plaintiff requests a hearing on the pending motions to dismiss. See Pl.'s Mot. [#132]. The decision of whether to hold a hearing on a pending motion is within the discretion of the court. See Local Rule 7(e); see also Puerto Rico Mar. Shipping Auth. v. Leith, 668 F.2d 46, 51 (1st Cir.

9

1981) ("A district judge does not abuse his discretion in granting a motion to dismiss without first holding a hearing if he is familiar with the relevant issues and if the defendants have adequate notice and opportunity to be heard on the plaintiff's motion to dismiss") (internal citation omitted). Here, the court concludes that it has sufficient familiarity with the issues at bar and that Plaintiff's position has been thoroughly presented in the written briefs and denies the request.

Plaintiff's Motion for Discovery [#137] requests leave to perform discovery "in order to improve the pleadings by making more specific and detailed factual allegations against Defendant CCS." Pl.'s Mot. Disc. 3 [#137]. The court's resolution of Defendant Coastal Studies' Motion to Dismiss [#107] does not turn on questions of fact that may be buttressed by additional discovery. Instead, as discussed above, the court allows Defendant Coastal Studies' Motion to Dismiss [#107] because, even taking the factual allegations in Plaintiff's complaint as true, Plaintiff failed to state a claim. Because Plaintiff failed to state a claim for relief, "he is not entitled to discovery, cabined or otherwise." Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009). Thus, Plaintiff's Motion for Discovery [#137] is denied.

Plaintiff has filed two motions for preliminary injunctive relief against the non-State Defendants: Plaintiff's Motion for Preliminary Injunction [#92] to compel Defendants Sawyer and Haviland to apply for an incidental take permit under the Act and submit certain fishing plans to the court, and Plaintiff's Renewed Application for a Temporary Restraining Order [#148], which requests that both the State Defendants and Coastal Studies be ordered to produce information concerning an ongoing entanglement. Preliminary injunctive relief is not available without a claim for relief in an underlying complaint. See CMM Cable Rep. v. Ocean Coast Prop., 48 F.3d 618, 620 (1st Cir.1995) ("The purpose of a preliminary injunction is to preserve

the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs"). Because no claims remain against the non-State Defendants, Plaintiff's Motion for Preliminary Injunction [#92] against Defendants Sawyer and Haviland is denied and Plaintiff's Renewed Application for a Temporary Restraining Order [#148] is denied to the extent it seeks relief from Coastal Studies.

### V. Conclusion

For the reasons set forth above:

1. Plaintiff's Motion for Preliminary Injunction against Defendants Sawyer and Haviland [#92] is DENIED.

2. Defendant Coastal Studies' Motion to Dismiss [#107] is ALLOWED.

3. Defendant Haviland's Motion to Dismiss [#111] is ALLOWED.

4. Defendant Sawyer and Defendant Massachusetts Lobstermen's Association's Motion to Dismiss [#113] is ALLOWED.

5. Plaintiff's Motion for Hearing [#132] is DENIED.

6. Plaintiff's Motion for Discovery [#137] is DENIED.

7. Plaintiff's Emergency Motion for Temporary Restraining Order [#145] is DENIED in light of Plaintiff's Renewed Motion for Temporary Restraining Order [#148].

8. Plaintiff's Renewed Motion for Temporary Restraining Order [#148] is DENIED as to Defendant Coastal Studies but remains pending as to the State Defendants.

IT IS SO ORDERED.

Date: February 3, 2020 /s/ Indira Talwani
United States District Judge