UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MAX STRAHAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10639-IT |
| | * | |
| SECRETARY, MASSACHUSETTS | * | |
| EXECUTIVE OFFICE OF ENERGY AND | * | |
| AND ENVIRONMENTAL AFFAIRS | * | |
| ("MEOEEA"), et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 7, 2020

TALWANI, D.J.

The North Atlantic right whale faces extinction. Fewer than 500 of them remain and Plaintiff alleges that their continued existence is imperiled by the use of fishing gear, specifically Vertical Buoy Ropes ("VBRs"), that entangle and kill these animals. Because of its perilous state, the right whale is protected by the Endangered Species Act (the "Act"). Under the Act, it is unlawful for any person to harm, capture, or kill a right whale or any other endangered species. The First Circuit has interpreted this prohibition to extend to government actors pursuant to whose authority another engages in the harm, capture, or kill of a protected species. Plaintiff alleges Defendants are acting in violation of the Act by promulgating regulations that require fishermen in the commonwealth to deploy gear, such as VBRs, that harm, capture, or kill endangered species such as the North Atlantic right whale. Plaintiff requests declaratory and injunctive relief deeming the continued licensing of VBRs to be unlawful under the Act. Defendants Massachusetts Executive Office of Energy and Environmental Affairs ("MEOEEA")

and David Pierce, director of the Massachusetts Division of Marine Fisheries ("Fisheries Division") move for dismissal. For the reasons stated below, Defendants David Pierce and MEOEEA's Motion to Dismiss [#117] is ALLOWED IN PART and DENIED IN PART.

## I. Factual Allegations as Set Forth in the Complaint[1]

The Second Amended Complaint [#68] ("Complaint") alleges in relevant part:

Plaintiff Richard Strahan is an avid whale watcher and researcher on sea turtles. Compl. ¶ 13 [#68]. He is the Chief Science Officer of Whale Safe USA, a campaign to make the United States coastline environmentally safe for endangered species of coastal whales and sea turtles. Id.

Defendant MEOEEA oversees the Fisheries Division, which has authority under Massachusetts law to "administer all the laws relating to marine fisheries" in the Commonwealth; Defendant David Pierce is the director of the Fisheries Division (Mr. Pierce and the MEOEEA are together referred to as the State Defendants). Mass. Gen. Laws ch. 130, §1A (2019); Compl. ¶ 14 [#68]. Plaintiff alleges that MEOEEA and Mr. Pierce are violating the Endangered Species Act, 16 U.S.C. § 1538, by requiring Massachusetts lobster fishermen to use VBRs to identify and retrieve lobster traps. Compl. ¶¶ 64-89 [#68]. These ropes "repeatedly entangle, kill and injure right whales," which are protected by the Endangered Species Act. Id. ¶ 47 [#68]; 50 C.F.R. § 17.11. The State Defendants allegedly are responsible for the annual deployment of over 100,000 VBRs in Massachusetts state waters. Id. ¶ 70.

## II. Relevant Procedural Background

Plaintiff's Second Amended Complaint [#68] included six counts brought against multiple defendants. On February 3, 2020, the court issued a Memorandum and Order [#150]

---

[1] For the purposes of this motion to dismiss, the court accepts the complaint's factual allegations as true. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d. 82, 84 (1st Cir. 2015).

dismissing the complaint as to all Defendants except the State Defendants and two Defendants that have not yet been summoned, Vineyard Wind LLC and Baystate Wind LLC. Furthermore, on February 6, 2020, the court accepted Plaintiff's Notice [#143] of voluntary dismissal of Count III, which alleged that the State Defendants unlawfully failed to issue Plaintiff a 2019 fishing license.[2]

Plaintiff's Complaint asserts the following counts as to the State Defendants:

- Count I alleges that the State Defendants violated § 1538(a) of the Endangered Species Act, 16 U.S.C. § 1538, by promulgating regulations that require the use of VBRs;

- Count II alleges that the State Defendants violated the same section of the Endangered Species Act by adversely altering critical habitats; and

- Count VI alleges that Defendant Pierce has violated the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H.

Pl.'s Compl. 18-26, 28 [#68].[3]

### III. Discussion

To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[2] On February 6, 2020, Plaintiff filed another Notice [#153] stating that he did not, in fact, intend to voluntarily dismiss Count III and that the court misinterpreted his statement that his claim was now moot. The court will address the issue raised by Mr. Strahan's most recent filing separately.

[3] Also pending are Plaintiff's Motion for Preliminary Injunction [#144] seeking that the State Defendants be enjoined from licensing fishing gear using VBRs in the right whale's designated critical habitat and Motion for a Temporary Restraining Order [#145] requesting that the court direct the State Defendants to preserve and produce certain records relating to a recent whale entanglement. Plaintiff's Motion for Preliminary Injunction [#144] is set for hearing on March 5, 2020. See Elec. Order [#155]. Plaintiff's Motion for Temporary Restraining Order [#145] remains under advisement.

570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Cardigan Mountain Sch., 787 F.3d at 84 (internal citations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. Id. State Defendants' Motion to Dismiss [#117] alleges that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12. The court addresses Plaintiff's three pending counts against the State Defendants in turn.

1. Count I: Violation of Endangered Species Act Sections 1538(a) and (g) by the State Defendants and the MLA

Count I alleges that the State Defendants have violated §§ 1538(a) and (g) of the Act by promulgating regulations that require the use of VBRs. Compl. ¶ 66 [#68].

Section 1538(a) provides that it is unlawful to "take" any endangered species. 16 U.S.C. § 1538(a)(1)(B). The Act defines "take" broadly to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Moreover, Section 1538(g) extends the reach of 1538(a) beyond a particular defendant's individual acts to also encompass third-party acts solicited or caused to be committed by another. See 16 U.S.C. § 1538(g). The First Circuit has concluded that where the state "has licensed commercial fishing operations to use . . . lobster pots in specifically the manner that is likely to result in a violation of federal law," the state's licensure activity amounts to a taking under § 1538(g) of the Act. Strahan v. Coxe, 127 F.3d 155, 164 (1st Cir. 1997).

Accordingly, the Complaint must plausibly allege facts showing that the State Defendants have licensed the use of fishing operations that are "likely to result in a violation of federal law" in order to satisfy the pleading requirement necessary to survive a motion to dismiss. Id.

State Defendants argue that Plaintiff's allegations are not sufficient because regulations promulgated since Strahan v. Coxe require a "specific assertion of a take caused by gear deployed in Massachusetts waters pursuant to a Massachusetts license" in order to state a claim for relief under the Act. State Defs.' Opp'n 21 [#118]. The referenced regulations are known as the Atlantic Large Whale Take Reduction Plan ("ALWTRP") regulations and were issued to "reduce the serious injury and mortality of large whales in gillnet and American lobster trap/pot gear." Taking of Marine Mammals Incidental to Commercial Fishing Operations; Atlantic Large Whale Take Reduction Plan Regulations, 70 Fed. Reg. 35894-01 (June 21, 2005). According to the State Defendants, these regulations "authoriz[e] deployment of commercial fishing gear in areas known to contain endangered whales." State Defs.' Opp'n 21 [#118]. Defendants argue that the promulgation of these regulations against the backdrop of the Act suggests a regulatory scheme whereby the "mere possibility of an entanglement," without more, cannot constitute a "take" for the purposes of § 1538(a)(1)(B). Id. at 21.

The court does not reach the question of whether the ALWTRP regulations require Plaintiff to prove more than a likelihood of a taking, because Plaintiff has sufficiently pleaded that state-licensed VBRs actually harm and kill right whales. Plaintiff plausibly alleges that, annually in recent years, five endangered right whales were killed or injured from lobsterpot gear. Compl. ¶ 71 [#68]. Further, Plaintiff plausibly alleges that "almost half of all lobsterpot activity" occurs in Massachusetts waters. Id. Based on these factual allegations, Plaintiff plausibly concludes that the State Defendants have caused a taking in violation of the Act. Although Plaintiff's allegations do not prove that Massachusetts-regulated VBRs have killed or injured a right whale, or even that a taking attributable to Massachusetts-regulated VBRs is more likely to have occurred than not, these are not the standards for the Complaint under Fed. R. Civ.

P. 8(a)(2). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of a right to relief]"). Because Plaintiff has presented plausible grounds for concluding that the State Defendants have violated the Act, Count I survives State Defendants' Motion to Dismiss [#117].

        2.   Count II: Adverse Alteration of Designated Critical Habitat for the Right Whale

Count II alleges that the State Defendants violated § 1538(a) of the Act by adversely altering habitats designated as critical under the Act through the licensing and regulation of commercial fishing operations off the Atlantic Coastline. Compl. ¶ 91 [#68].

Plaintiff's claims in Count II appear to be factually redundant with those in Count I. While habitat modifications may give rise to a take under § 1538(a), it is only where the habitat modification "actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3; see also Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 697 (1995) (affirming the Secretary of Interior's definition). In other words, habitat modification is one way to prove a "take" under § 1538(a), but it does not itself give rise to a separate cause of action.

To be sure, the Act does contain a separate prohibition against habitat modifications that arise separate and apart from any "take" under § 1538(a); in § 1536(a), the Act also restricts certain types of activities that result in the "adverse modification" of specific areas designated by the Secretary of the Interior as "critical habitats." 16 U.S.C. § 1536(a)(2). Although Count II references § 1538 and not § 1536, the Complaint [#68] references adverse alterations that the Defendants have allegedly made to the right whale's "designated critical habitat" and cites 50 C.F.R. § 226.203, the regulation that defines the right whale's critical habitat. See Compl. ¶ 91

6

[#68]. Even reading Plaintiff's claim liberally as alleging a violation under § 1536(a) and not a duplicative claim under § 1538, critical habitat designations under § 1536(a) only constrain federal government activity, not private individuals. See 64 Fed. Reg. 36274-01 ("Individuals, firms and other non-Federal entities are not affected by the designation of critical habitat so long as their actions do not require support by permit, license, funding, or other means from a Federal agency"); Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 139 S. Ct. 361, 366 (2018) (discussing federal obligations under § 1536(a)). Because Plaintiff's allegations of adverse habitat alterations only reference non-federal entities, Plaintiff has failed to state a claim for which he can obtain relief under § 1536(a). Accordingly, Count II is subject to dismissal.

        3.   Count VI: Violation of the Massachusetts Civil Rights Act

Plaintiff alleges that Defendant Pierce repeatedly threatened to deny Plaintiff a commercial and recreational lobsterpot license, issued Plaintiff a trespass notice, directed his staff to not speak with Plaintiff, and refused to produce public records to Plaintiff. Compl. ¶ 105 [#68]. Plaintiff alleges that Defendant Pierce undertook these actions to intimidate and coerce Plaintiff into not suing the State Defendants and Plaintiff now seeks relief under the Massachusetts Civil Rights Act for Defendant Pierce's alleged conduct. Id. However, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Lopez v. Massachusetts, 588 F.3d 69, 73 (1st Cir. 2009). Here, Plaintiff has alleged that Defendant Pierce, in undertaking his official duties, has violated the Massachusetts Civil Rights Act, a state law. "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). Because instructing the State Defendants on how to comport with state law

would run afoul of the principles of federalism that underlie the Eleventh Amendment, Plaintiff's claim that Defendant Pierce violated the Massachusetts Civil Rights Act must be dismissed.

## IV. Conclusion

For the reasons set forth above, State Defendants' Motion to Dismiss [#117] is DENIED as to Count I and ALLOWED as to Counts II and VI.

IT IS SO ORDERED.

Date:  February 7, 2020 /s/ Indira Talwani
United States District Judge