UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,　　　　*
　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　*
　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　*　　　　Civil Action No. 19-cv-10639-IT
　　　　　　　　　　　　　　*
SECRETARY, MASSACHUSETTS　　*
EXECUTIVE OFFICE OF ENERGY AND　*
AND ENVIRONMENTAL AFFAIRS,　*
et al.,　　　　　　　　　　*
　　　　　　　　　　　　　　*
　　　　Defendants.　　　　*

ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY RELIEF PENDING TRIAL

February 12, 2021

TALWANI, D.J.

Before the court is Plaintiff Richard Max Strahan's Motion for Preliminary Relief

Pending Trial [#259]. Plaintiff again requests that the court immediately enjoin Defendants from,

inter alia, authorizing and/or licensing the use of vertical buoy ropes ("VBRs") by lobsterpot or

gillnet fishermen in all Massachusetts waters. For the reasons set forth below, Plaintiff's motion

for preliminary relief pending trial is DENIED.

I.　　Relevant Background

In an April 30, 2020 Memorandum and Order Granting in Part and Denying in Part

Preliminary Injunctive Relief [#206], the court found that Plaintiff was likely to prevail on his

claim that Massachusetts' lobsterpot and gillnet licensing scheme violated the Endangered

Species Act (the "Act") due to incidental "takes"[1] of endangered species, most particularly the

North Atlantic right whale (the "right whale"). At the same time, the court acknowledged that

Massachusetts' permitting scheme may ultimately prove to be lawful if Massachusetts is able to

obtain an Incidental Take Permit under Section 10 of the Act and that the court had an

insufficient factual basis for assessing the likelihood of Massachusetts obtaining the necessary

permit. The court also considered equitable factors, such as the hardship that an immediate

injunction would have on lobstermen across the state. The court ordered Defendants to

immediately apply for the necessary permit, denied Plaintiff's request for a preliminary

injunction prohibiting further use of VBRs in state waters for further relief, and allowed Plaintiff

to renew his motion for a preliminary injunction no sooner than 90 days later, assuming a permit

had not yet been obtained by that time. Plaintiff filed no appeal of this order.

On September 16, 2020, Plaintiff filed a Renewed Motion for Preliminary Injunction

[#235] and again requested that the court immediately enjoin Defendants from continuing to

license VBRs in state waters. As set forth at an October 8, 2020 conference, the court found that

the question of whether Massachusetts was likely to be able to obtain the required permit

remained a heavily disputed question of fact and that the court could not go further than it

already had on the papers alone. See Status Conference Tr. 10 [#253]. Instead, an evidentiary

hearing was necessary. See Cobell v. Norton, 391 F.3d 251, 261 (D.C. Cir. 2004) ("[I]f there are

genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an

evidentiary hearing is required.") (citing Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167 (7th

Cir. 1997)). At the status conference, the court noted that an evidentiary hearing in the middle of

---

[1] The term "Take" is used in the Act to refer to, inter alia, harming, harassing, or killing of
endangered species. 16 U.S.C. §§ 1532(19), 1538(a)(1)(B).

discovery, a year and a half into the case, may prove inefficient as compared to an early bench trial following the completion of discovery. Status Conference Tr. 4–5 [#253]. The parties agreed, and the court set this matter for trial in June 2021. Id. 11–12; Second Am. Scheduling Order [#283]. Accordingly, the court denied Plaintiff's Renewed Motion for Preliminary Injunction [#235] without prejudice.

II.   Plaintiff's Motion for Preliminary Relief Pending Trial

On November 12, 2020, while discovery in anticipation of trial was ongoing, Plaintiff renewed his arguments in the pending Motion for Preliminary Relief Pending Trial [#259]. Plaintiff contends that "new and mounting facts regarding the fate of the Northern Right Whale . . . show an undeniable need for immediate relief." Mot. Prelim. Relief Pending Trial 2 [#259].

Plaintiff's new facts, which are effectively undisputed, are as follows. First, Plaintiff put forth evidence of an entangled right whale known as "Cottontail" that was found in federal waters and subsequently swam through Massachusetts waters. Mem. Supp. Mot. Prelim. Relief Pending Trial ("Pl.'s Mem.") 7–8 [#260]. However, Plaintiff has not introduced evidence that the whale was entangled in a rope licensed by Massachusetts or placed in Massachusetts waters. Second, Plaintiff put forth evidence of another right whale entanglement spotted off the New Jersey coast. Plaintiff offered some evidence that this right whale was entangled somewhere between Canada and New Jersey, though there is no evidence as to where. Id. at 8–9. Third, Plaintiff observed that a dead Minke Whale, which is not endangered, was found entangled and stranded on Cape Cod. Again, there is no evidence as to whether the entangling rope was licensed by Defendants or placed in Massachusetts waters. Id. at 9. Fourth, Plaintiff put forth evidence that the right whale is increasingly present in the waters of southern New England,

particularly off the coast of Martha's Vineyard and Nantucket. Id. Fifth, Plaintiff put forth evidence that there was an 11 percent decline in the right whale population between 2018 and 2019. Id. at 10.

Plaintiff also raised further legal argument, contending that preliminary relief pending trial is required as a matter of law. Namely, Plaintiff contends that the court's April 30, 2020 Order misapprehended the legal standard provided by the Endangered Species Act and Supreme Court precedent. Id. at 10. Plaintiff argues that once the court made a preliminary finding that continued permitting of VBRs was likely to result an irreparable harm to an endangered species, the court was compelled to immediately enjoin that activity before a resolution on the merits. Id.

III.  Discussion

The court is not persuaded that Plaintiff's new evidence warrants any amendment of the court's prior order. Indeed, the evidence is consistent with the court's preliminary findings "that entanglements will continue as long as VBRs are deployed in the whales' habitat," "that right whales are being pushed towards extinction and that, without intervention, continued entanglements will hasten the end of this species." Mem. & Order Granting Part Denying Part Prelim. Inj. Relief ("Prelim. Inj. Mem. & Order") 22, 27 [#206]. The newly offered facts do not tip the scales as to the central question left open by the court's April 30, 2020 Order; whether Massachusetts' jurisdiction-specific efforts to reduce whale entanglements are likely to persuade the expert federal agency to find that Massachusetts is eligible for an Incidental Take Permit for its licensing scheme. Accordingly, as before, that question of fact remains and will need to be addressed at the forthcoming trial.

The court is also not swayed by Plaintiff's contention that it was legal error for the court not to immediately enjoin the state from continuing its licensing scheme upon the court

concluding that the state was likely violating the Endangered Species Act. Plaintiff argues that

the Supreme Court has directed that where an injunction is the only mechanism of stopping a

violation of the Endangered Species Act, "the law mandates enjoining that conduct." Pl.'s Mem.

10 [#260]. Plaintiff relies on the Supreme Court's holding in <u>Tennessee Valley Authority v. Hill</u>,

437 U.S. 153 (1978), which Plaintiff contends is "perfectly parallel" with the facts here. Pl.'s

Mem. 10–11 [#260]. In <u>TVA</u>, the Court held that, although equitable remedies usually involve a

"balancing of equities and hardships," where Congress has plainly stated—in the form of the

Endangered Species Act—that Congress's highest priority is the protection of endangered

species, the court shall not second-guess Congress's prioritization by performing its own

evaluation of the equities. 437 U.S. at 184.

  But there are critical factual and legal differences between <u>TVA</u> and the case at bar.

Starting with the facts, in <u>TVA</u>, the district court, *after a trial on the merits*, concluded that,

absent an injunction, a proposed dam (the Tellico Dam) would "either eradicate the known

population of snail darters or destroy their critical habitat." <u>Id.</u> at 171. Indeed, the Court noted

that this finding of fact was not seriously in dispute. <u>Id.</u> As the First Circuit has explained, "the

drastic result in [<u>TVA</u>] stemmed from the strong and undisputed showing of irreparable harm

that would occur absent an injunction: an entire species would become extinct." <u>Animal Welfare</u>

<u>Inst. v. Martin</u>, 623 F.3d 19, 27 (1st Cir. 2010) (citing <u>United States v. Oakland Cannabis</u>

<u>Buyers' Co-op.</u>, 532 U.S. 483, 496–97 (2001); <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305,

314 (1982)). Here, in contrast, while the court has concluded as a preliminary matter that

Massachusetts' licensing scheme is likely to be in violation of the Endangered Species Act, the

court has not yet held a trial on the merits and has made no finding that, absent a preliminary

injunction, Massachusetts' regulatory scheme continuing through the conclusion of these proceedings will result in the extinction of an endangered species.

There is also an important legal distinction. As Defendants point out, following the Supreme Court's decision in <u>TVA</u>, Congress amended the Endangered Species Act so that it may be more flexible in application. This amendment included the creation of the Incidental Take Permit provision. By enacting this exception to the Act's otherwise stringent prohibition on takes of endangered species, Congress made plain that it distinguished certain takes from others. That is, where an actor engages in otherwise lawful activity that incidentally harms an endangered species, that lawful activity may be excused from liability under the Act so long as the appropriate expert agency has determined, inter alia, that any such incidental takes would not appreciably reduce the likelihood of the survival and recovery of the species. 16 U.S.C. § 1539(a)(2)(B); <u>see also</u> 50 C.F.R. § 222.307. Thus, in contrast to <u>TVA</u>, where the Supreme Court concluded that an injunction was necessary to give life to Congress's pronouncements, here Congress has provided an avenue under which Massachusetts may be able to continue implementing its regulatory scheme despite incidental harms to endangered species that may result. Put another way, failing to enjoin Massachusetts' licensing activity would not necessarily constitute an affront to the will of the Congress but could, under the right circumstances, be consistent with it. And while Plaintiff correctly argues that any subsequent permit will not render lawful any takes that occurred prior to the permit's issuance, Pl.'s Mem. 19 [#260], the Supreme Court has explained that "[t]he purpose and language of the statute under consideration in <u>TVA</u>, not the bare fact of a statutory violation, compelled [the injunction]." <u>Weinberger</u>, 456 U.S. at 314. Here, the purpose and language of the Endangered Species Act, as amended, does not automatically prohibit otherwise lawful conduct that may result in incidental harm to endangered

species so long as certain criteria are met. Thus, unlike in <u>TVA</u>, it is not the case that only an injunction can vindicate the objectives of the Act.

Decisions in this circuit are in accord that an injunction need not automatically follow a preliminary finding of a likelihood of liability under the Endangered Species Act. Indeed, in <u>Strahan v. Coxe</u>, Plaintiff made this same argument to the First Circuit and lost. 127 F.3d 155, 171 (1st Cir. 1997). There, as here, the District Court concluded, on Plaintiff's motion for a preliminary injunction, that Massachusetts' licensing of VBRs in state waters resulted in "a strong likelihood that endangered whales will be 'taken' in violation of the ESA." <u>Strahan v. Coxe</u>, 939 F. Supp. 963, 989 (D. Mass. 1996). However, the court only granted Plaintiff his requested injunction in part, denying Plaintiff's request to immediately enjoin Massachusetts' licensing of VBRs in state waters. On appeal, Plaintiff argued, as he does here, that "the Court in <u>TVA</u> ruled that injunctive relief is mandatory upon a finding of a violation of the ESA." <u>Coxe</u>, 127 F.3d at 171. The First Circuit disagreed, stating that the district court was not required to mechanically issue the requested injunction upon a finding of a likelihood of liability, but held discretion to fashion other interim relief so long as the district court ensured "that any violation would end." <u>Id.</u>

In case after case since its 1997 decision in <u>Coxe</u>, the First Circuit has affirmed the principle that an injunction does not necessarily follow a finding of a likelihood of liability under the Endangered Species Act. Instead, the First Circuit has made plain that judges are to apply the traditional four-part test before exercising the court's powers, in equity, to employ the extraordinary remedy of an injunction. <u>See</u> <u>Animal Welfare Inst.</u>, 623 F.3d at 27 (collecting cases for the proposition that "[t]his circuit has consistently applied the traditional tests for preliminary injunctions in ESA cases."). However, because the Endangered Species Act reflects

the Congress's, and thus the people's, desire to end the extinction of species no matter the costs, considerations of the balance of hardships and the public interest do not start out in equipoise, but are "tip[ped] heavily in favor of protected species." Coxe, 127 F.3d at 160 (quoting Nat'l Wildlife Fed'n v. Burlington N. R.R., 23 F.3d 1508, 1510 (9th Cir.1994)) (internal quotation mark omitted). But that should not be interpreted to mean that considerations of hardships and the public interest never cease to be relevant and may, under the right facts, even tip against the protection of endangered species. See Water Keeper All. v. U.S. Dep't of Def., 271 F.3d 21, 34 (1st Cir. 2001) (holding that the presumption in favor protected species cannot "blindly compel" an outcome in favor of endangered species where the sought-after injunction would implicate national security).

For these reasons and the reasons set forth in the court's April 30, 2020 Memorandum and Order Granting in Part and Denying in Part Preliminary Injunctive Relief [#206], the court again rejects Plaintiff's argument that, because the court has preliminarily concluded that Massachusetts is likely regulating its lobsterpot and gillnet fisheries in violation of the Endangered Species Act, the court is obligated to immediately enjoin Massachusetts from continuing to authorize and/or regulate the use of VBRs in state waters. Although the Endangered Species Act may authorize such an injunction, the court concludes that the requested injunction would not be a proper exercise of the court's equitable discretion at this time.

IV.   Conclusion

For the reasons set forth above, Plaintiff's Motion for Preliminary Relief Pending Trial [#259] is DENIED.

IT IS SO ORDERED.

Date: February 12, 2021                                  /s/ Indira Talwani
                                                         United States District Judge