UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MAX STRAHAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10639-IT |
| | * | |
| SECRETARY, MASSACHUSETTS | * | |
| EXECUTIVE OFFICE OF ENERGY AND | * | |
| AND ENVIRONMENTAL AFFAIRS, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

ORDER GRANTING IN PART
MASSACHUSETTS LOBSTERMEN'S SURVIVAL FUND'S
MOTION TO INTERVENE

February 17, 2021

TALWANI, D.J.

Before the court is non-party Massachusetts Lobstermen's Survival Fund's Motion to Intervene [#269]. The Massachusetts Lobstermen's Survival Fund ("the Fund") seeks leave to intervene pursuant to Federal Rule of Civil Procedure 24. The Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs and the Director of the Massachusetts Division of Marine Fisheries (collectively, "the Commonwealth Defendants") take no position on the Fund's motion. Plaintiff, Richard Strahan, opposes the motion, contending that the motion is untimely, that the Fund lacks standing to participate in this case because it is not "a juridical person," and that the interests it seeks to represent are adequately protected by counsel for the Commonwealth and through participation as amicus. Plaintiff argues further that if intervention is permitted, it should be conditioned on terms that ensure that the intervention minimizes disruption. For the reasons set forth below, the court will impose discovery requirements and limitations to ensure that the intervention minimizes disruption, and with

those limitations in place, GRANTS the Fund's Motion to Intervene [#269] pursuant to Rule 24(b).

I.   Relevant Procedural Background

Plaintiff filed the instant action on April 4, 2019, see Complaint [#1], and an Amended Complaint [#68] on June 16, 2019, against the Commonwealth Defendants, the Center for Coastal Studies, John Haviland, Arthur Sawyer, and the Massachusetts Lobstermen Association ("MLA").[1] Following a July 1, 2019 scheduling conference, the court issued a scheduling order, setting, inter alia, an October 31, 2019 deadline for filing, without good cause shown, motions seeking leave to add new parties or to amend the pleadings to assert new claims or defenses. Scheduling Order [#94].

The Commonwealth Defendants, the Center for Coastal Studies, John Haviland, Arthur Sawyer, and the MLA moved to dismiss Plaintiff's claims. See Motions to Dismiss [#107], [#111], [#113], [#117]. While those motions were pending, Plaintiff filed a Motion for Preliminary Injunction [#144], requesting, inter alia, that the court enjoin the Commonwealth Defendants from licensing Vertical Buoy Ropes ("VBRs") in Massachusetts waters.

On February 3, 2020, the court dismissed all claims against the non-Commonwealth Defendants for failure to state a claim. See Memorandum and Order [#150]. On February 7, 2020, the court allowed Plaintiff's Endangered Species Act claim against the Commonwealth Defendants to proceed. See Memorandum and Order [#160].

On March 2, 2020, Plaintiff filed a motion seeking leave to file a second amended

---

[1] Plaintiff also named, but did not timely serve, Vineyard Wind LLC and Baystate Wind LLC. The court granted these companies' Motions to Dismiss [#227], [#229], as unopposed. See Order [#241].

complaint asserting, inter alia, claims against the dismissed Defendants. See Pl.'s Mot. [#175]. The court denied relief both on the merits and as untimely. See Elec. Order [#210].

On April 30, 2020, the court issued a Memorandum and Order [#206] granting in part and denying in part Plaintiff's requested preliminary injunctive relief. Namely, the court concluded that Plaintiff was likely to prevail on the merits of his Endangered Species Act claim and ordered the Commonwealth Defendants to immediately apply for an Incidental Take Permit under Section 10 of the Endangered Species Act. Id. at 21. The court allowed Plaintiff to renew his motion for a preliminary injunction after 90 days if the Commonwealth Defendants had not obtained an Incidental Take Permit by that time. Id. at 31. As reported in periodic status reports, the Commonwealth Defendants have begun the process for applying for the Incidental Take Permit. See Reports [#249], [#263], [#276], [#295].

On September 16, 2020, Plaintiff filed his renewed Motion for Preliminary Injunction [#235]. At an October 8, 2020 status conference, the court determined that, in light of the important questions of fact underlying resolution of liability and remedies, it would be inefficient to delay discovery and resolution on the merits in order to hold an evidentiary hearing on the motion for preliminary injunction. See Tr. Oct. 8, 2020 Conf. 10–12 [#253]. The court denied the pending motion, again without prejudice to renew, and directed the parties to submit a proposed pretrial schedule. Id. On October 19, 2020, the court issued an Amended Scheduling Order and Pretrial Order [#251], setting this matter for a bench trial to commence on June 7, 2021.

On December 7, 2020, the Fund filed its Motion to Intervene [#269]. Since that date, there have been minor changes in the scheduling order, but the trial remains set for June 2021.

3

II.    Legal Standard

Under Rule 24(a)(2),

> [o]n a timely motion, the court *must permit* anyone to intervene who . . . claims
> an interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added). The First Circuit has set out that the rule requires:

"(1) a timely application for intervention; (2) a demonstrated interest relating to the property or

transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the

disposition of the action threatens to create a practical impairment or impediment to its ability

to protect that interest; and (4) a satisfactory showing that existing parties inadequately

represent its interest." See Conservation Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st

Cir.1992) (citing Pub. Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir.

1998)). The analysis is not a balancing test but instead requires all four prerequisites to be met.

Id. (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir.1989)).

Under Rule 24(b), on a timely motion, the court *may permit* anyone to intervene who

has "a claim or defense that shares with the main action a common question of law or fact."

Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) provides further that "[i]n exercising its discretion, the

court must consider whether the intervention will unduly delay or prejudice the adjudication of

the original parties' rights." Fed. R. Civ. P. 24(b)(3).

III.    Discussion

Plaintiff does not dispute that the individual lobstermen that comprise the Fund's

members will be directly impacted if Plaintiff obtains the relief he seeks in this action, see Fed.

R. Civ. P. 24(a)(2), nor that the Fund's proposed intervention raises common questions of fact

or law with Plaintiff's action, see Fed. R. Civ. P. 24(b)(1)(B). Instead, Plaintiff contends that the Fund, an unincorporated association, is not a proper party to this action under the Federal Rules and Massachusetts law, and that, in any event, intervention is untimely. Finally, Plaintiff argues that if the court were to grant the Fund's motion to intervene, the court should place conditions on the Fund's intervention. The court addresses these issues below.

1.  *Whether the Fund is a Proper Party*

Plaintiff argues that the Fund's motion to intervene must be denied since the Fund is not a proper party under the Federal Rules of Civil Procedure and Massachusetts law as the Fund is an unincorporated association. Pl.'s Opp'n 9 [#287].[2] Plaintiff puts forth two distinct arguments for why the Fund is not a proper party. First, Plaintiff contends that the Fund is not a "real party in interest" as required by Rule 17(a). Pl.'s Opp'n 9 [#287]. As a result, Plaintiff argues, the members of the Fund, not the Fund itself, must be the named intervenors. Id. Second, Plaintiff contends that the Fund does not have "the capacity to be sued" under Rule 17(b). That Rule provides that the "capacity to sue or be sued" is, in the case of unincorporated associations, set by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). Because Massachusetts law does not allow unincorporated associations to sue or be sued, Plaintiff contends that the Fund also cannot appear as a party under Rule 17(b). The court addresses the two arguments in turn.

Rule 17(a) requires that "[a]n action must be prosecuted in the name of the real party in interest." (Emphasis added). The rule thus only imposes a restriction on who may *prosecute* a

---

[2] As set forth in the declaration of Craig Hillier, the Fund consists of approximately 40 members, all Massachusetts commercial lobstermen. See Hillier Decl., Exhibit 2 [#270-2]. Craig Hillier is the president of the Fund. Id.

claim. While this does not necessarily limit the application of Rule 17(a) to plaintiffs, as claims

may be prosecuted by defendants, crossclaimants, and intervenors, it does "appl[y] only to

those who are asserting a claim." 6A Wright and Miller, Federal Practice and Procedure § 1543

(3d ed.).[3] Here, the Fund asserts no claims, see Proposed Answer [#270-3], and thus the

restriction does not apply.

Rule 17(b)(3) provides, in relevant part, that, for unincorporated associations, the

"capacity to sue or be sued" is set "by the law of the state where the court is located" except

where certain exceptions apply. Plaintiff correctly asserts that "under Massachusetts law, 'it is a

well established principle that an unincorporated association cannot be a party to litigation.'"

Id. at 13–14 (quoting Save the Bay, Inc. v. Dep't of Pub. Utilities, 366 Mass. 667, 675 (1975)).

However, there is an important exception to Rule 17(b)(3), which provides that "a partnership

or other unincorporated association with no such capacity under that state's law may sue or be

sued in its common name to enforce a substantive right existing under the United States

Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Plaintiff dismisses this exception, arguing

that neither the Fund nor its members have a substantive right under the Endangered Species

Act, but instead "seek to *avoid* the enforcement" of the Act. Pl.'s Opp'n 9 n.35 [#287]. But

Plaintiff's dismissal of this exception cites no precedent for the proposition that where a party

is defending against enforcement of a federal law, the Rule 17(b)(3)(A) exception does not

apply, and this argument is contrary to case law and treatises on point. As explained by Wright

---

[3] This is consistent with the Rule's function, which is "simply to protect the defendant against a
subsequent action by the party actually entitled to recover, and to ensure generally that the
judgment will have its proper effect as res judicata." Id. (citing Key Constructors, Inc. v.
Harnett County, 315 F.R.D. 179 (E.D.N.C. 2016)).

and Miller, the exception arose out of, and expanded upon, the Supreme Court's holding in

United Mine Workers of Am. v. Coronado Coal Co., where the Court held that an

unincorporated labor union could be sued under federal law in federal court even though that

same unincorporated entity was not subject to suit in state court. 6A Wright and Miller, Federal

Practice and Procedure § 1564 (3d ed.) (citing Coronado, 259 U.S. 344, 391 (1922)); see also

id. ("Rule 17(b)(3)(A) amplifies the Coronado decision to include all partnerships and other

unincorporated associations and applies both to their capacity to sue *and their capacity to be*

*sued*") (emphasis added). Thus, the question is not whether *the Fund* is asserting a substantive

federal right but, instead, whether *the action* is enforcing a federal right. See Univ. of Texas at

Austin v. Vratil, 96 F.3d 1337, 1339 (10th Cir. 1996) ("The Federal Rules, however, allow

[unincorporated] associations such as NCAA to be sued in their own name in federal court for

purpose of enforcing a federal right"). Because Plaintiff's action is brought under the citizen-

suit provision of the federal Endangered Species Act and seeks to enforce federal law, the Rule

17(b)(3)(A) exception applies and the Fund, as an unincorporated Association, has the capacity

to be sued.

> ## 2. *Whether Plaintiff's Motion to Intervene is Timely*

Plaintiff argues that the motion to intervene should be rejected as untimely. In

considering whether a motion to intervene is timely, the First Circuit has directed district courts

to take four factors into consideration: "(1) the length of time the applicant knew or reasonably

should have known that its interest was imperiled before it moved to intervene; (2) the

foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice

to the applicant if intervention is denied; and (4) [idiosyncratic] circumstances which, fairly

viewed, militate for or against intervention." Banco Popular de Puerto Rico v. Greenblatt, 964

F.2d 1227, 1231 (1st Cir. 1992) (citations omitted). The question of timeliness "is inherently fact-sensitive and depends on the totality of the circumstances" and "the status of the litigation at the time of the request for intervention is 'highly relevant.'" R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) (quoting Banco Popular, 964 F.2d at 1231).

Starting with the length of time that the Fund knew or reasonably should have known its interests were imperiled, Plaintiff contends that the Fund (or at least its members) knew about this action starting when it was filed nearly two years ago since the initial suit named the Massachusetts Lobstermen's Association as a defendant. Pl.'s Opp'n 5 [#287]. The Fund contends that it had no reason to know that its members interests were imperiled until the Massachusetts Division of Marine Fisheries published a proposed rule in November 2020 to close all commercial lobstering within state waters during the months of February through April 2021. Fund Mem. 2 [#270].

The time for a potential intervenor to act begins "no later than the time 'when the intervenor became aware that its interest in the case would no longer be adequately protected by the [existing] parties.'" Banco Popular, 964 F.2d at 1231 (citing Public Citizen, 858 F.2d at 785). Once that count starts, the applicant "must *then* act reasonably promptly." Id. (emphasis added) (citing United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977); United States v. South Bend Community School Corp., 710 F.2d 394, 396 (7th Cir.1983)). Thus, the question is not simply how long a case has been pending, but a contextual analysis based on all relevant circumstances.

Here, the Fund's members had little reason to anticipate when this action was filed that it posed a real threat to their interests. As discussed in the court's April 30, 2020 Memorandum

8

and Order 5–13 [#206], Plaintiff has a decades-long track record of initiating *pro se* litigation in federal district court only to voluntarily dismiss the action well-before resolution on the merits, much less final judgment. The Fund's members had no obligation to mechanically seek to intervene at the outset of what could reasonably be perceived as a nuisance suit.

On April 30, 2020, however, the court issued its Memorandum and Order concluding that the Massachusetts lobsterpot and gillnet fisheries were likely running afoul of the Endangered Species Act, and entered a preliminary injunction ordering the Commonwealth Defendants to immediately apply for an Incidental Take Permit under Section 10 of the Endangered Species Act. Id. at 21. As of that date, lobstermen with knowledge of the action would certainly have understood the stakes at issue in this action and Plaintiff has offered evidence that the court's February 7, 2020 and April 30, 2020 orders were publicized in monthly newsletters shared with members of the Massachusetts Lobstermen's Association. See Downey Decl. ¶¶ 4–13 [#288].

The Fund rebuts that its President, Craig Hillier, had no knowledge of this case until late November 2020. Hillier Supp. Decl. ¶ 4 [#292-3]. But while the court accepts as true Mr. Hillier's statement that *he* did not have personal knowledge of this litigation until November 2020, the motion to intervene is not brought by Mr. Hillier but by a group of commercial lobstermen that, at least collectively, knew or should have known more than half a year earlier that this litigation had taken a serious turn.

In considering when the Fund's members knew that their interests may be imperiled, the court takes into account the Fund's assertion that the Commonwealth Defendants "do not and perhaps institutionally cannot adequately represent the interests of the Fund's members," and its reliance on First Circuit case law for the proposition that where, as here, regulators are the

9

named defendants, they "could not be counted upon to adequately represent the interests of the commercial fishing community . . . ." Fund Mem. 8 [#270] (citing Mosbacher, 966 F.2d at 44–45). Accepting this concern, the court concludes that the time for the Fund (and its members) to act began promptly following the court's April 2020 decision.

The court considers next how the Fund's delay may prejudice the existing parties by its effect on the proceedings. See 7C Wright and Miller, Federal Practice and Procedure § 1916 (3d ed.) ("The timeliness requirement is not intended as a punishment for the dilatory and the mere lapse of time by itself does not make an application untimely. The court must weigh the lapse of time in the light of all the circumstances of the case"). Here, Plaintiff contends that intervention "will significantly prejudice the plaintiff" because it will disrupt the parties' expedited trial schedule. Pl.'s Opp'n 11 [#287]. This is a real concern given that in this case, more than most, time is of the essence. In October 2020, the court denied Plaintiff's motion for a preliminary injunction, noting that the parties were in the midst of discovery, and that an early bench trial following the completion of that discovery would be more efficient than an evidentiary hearing on a motion for preliminary injunction. Following consideration of the parties' competing proposals, on October 19, 2020, the court amended the prior scheduling order and set a final date for service of written discovery of November 16, 2020, deadlines for completion of fact and expert discovery, and set a June 2021 trial date. Amended Scheduling and Pretrial Order [#251]. On November 17, 2020, the court granted the parties' joint motion to extend by 5 days the deadline for serving written discovery. Electronic Order [#264]. The court has subsequently made other minor changes to the schedule, but the June 2021 bench trial has remained a firm date. The court has also recently denied Plaintiff's renewed motion for a Preliminary Injunction on the basis that important factual disputes precluded the court from

ordering preliminary injunctive relief and concluding that, in light of the June 2021 trial date, no preliminary relief was necessary before a trial may be held on the merits. See Memorandum and Order [#309].

The Fund's motion to intervene was not filed until two weeks after the date service of written discovery was to be completed and was not filed on an emergency basis. While the Fund asserts that "the parties have only begun the written discovery process," it necessarily concedes that it could not meet the court's deadline to serve written discovery (which had already passed) and offers no suggestion that it would forego serving written discovery requests. Fund Mem. 3 [#270] ("With the exception of the deadline to serve written discovery (expired on November 23, 2020), the Fund intends to comply with the existing discovery schedule."). On this record, the court finds that the Fund's suggestion that it may join fully in these proceedings without impairing the trial schedule is unrealistic and that a delay of the trial would be prejudicial to the existing parties. If, however, the Fund's intervention required no delay in the trial schedule, prejudice to the existing parties would be avoided. [4]

---

[4] Plaintiff argues that intervention will lead to a "sideshow" regarding, inter alia, the economic and commercial consequences of any ban on use of Vertical Buoy Ropes. Pl.'s Opp'n 11–12 [#287]. While the economic consequences of any injunction affecting the Commonwealth's licensing scheme may be irrelevant for determining liability under the Endangered Species Act, considerations of the economic consequences may ultimately prove relevant if the court is required to fashion equitable relief in the form of a permanent injunction. Indeed, the court explicitly considered the relevant hardships and the public interest when it fashioned preliminary injunctive relief. See Memorandum and Order 28–30 [#206]. The same factors are relevant in the context of a permanent injunction. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

Finally, the court must also consider the foreseeable prejudice to the applicant if intervention is denied.[5] The Fund points to no deficiencies in how the Commonwealth Defendants have represented the Fund's (or its members') interests in this action so far, and the court finds none. Nor does the court anticipate that the Fund will be able to show deficiencies with regard to the Commonwealth's fact discovery and development of the factual record regarding the regulation of lobsterpot and gillnet fishing and incidental harms to endangered species that may have resulted from the Commonwealth's regulatory scheme.

Nonetheless, there is potential prejudice to the Fund's members moving forward. As the First Circuit wrote in Mosbacher, and is equally true here, the Commonwealth is not the real target of Plaintiff's efforts, but instead the targets are the entities that the Commonwealth regulates. 966 F.2d at 43 ("The fishing groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future."). That potential prejudice may be addressed, however, if the court permits the Fund to intervene permissively, with limits on the discovery it may seek, so that the Fund can address potential future issues and participate at trial while not burdening the existing parties with additional written discovery that would delay these proceedings.

"[W]hen a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter."

_____

injunction"); see also Memorandum and Order 6–8 [#309] (setting forth that the court will consider the balance of the hardships and the public interest before ordering any equitable relief).

[5] The court finds no "idiosyncratic" considerations present here that are not redundant with other considerations.

R & G Mortg. Corp., 584 F.3d at 11. Here, however, the court reaches different conclusions as to intervention as of right and permissive intervention. Considering all the relevant factors—the Fund's delay in seeking intervention, the likely and burdensome disruption to the trial schedule that would result if intervention were granted without curtailing the Fund's rights to discovery, and the absence of prejudice to the Fund if intervention were permitted with limitations on discovery—the court concludes that intervention as of right (with full discovery rights) is untimely.

Under Rule 24(b), however, the court has greater flexibility to limit the Fund's participation in this action, namely by limiting the Fund's rights to discovery. By doing so, the central prejudice that may result from intervention—delay of the June 2021 trial—may be curtailed, shifting the balance of the timeliness analysis in favor of limited permissive intervention.[6] Accordingly, the court finds the motion for permissive intervention to be timely.

   3.  *Whether the Fund is Entitled to Permissive Intervention*

Permissive intervention is "wholly discretionary" and courts may consider "almost any factor rationally relevant" in its analysis. Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co., 290 F.R.D. 11, 14 (D. Mass. 2013); Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir.

─────────────────────

[6] Arguably, where intervention is allowed as of right, a court may still fashion conditions that strike a balance between the need to "get all interested parties to the table" while also "'preventing an expansion of scope' capable of threatening the court's 'control' over the matter." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico for Puerto Rico, 872 F.3d 57, 64 (1st Cir. 2017) (quoting United States v. City of Detroit, 712 F.3d 925, 931–32 (6th Cir. 2013)). But where, as here, the applicant-in-intervention should have acted months sooner, has not committed to not seeking to reopen written discovery, and has requested permissive intervention in the alternative, the court finds those conditions on discovery more appropriately considered in connection with permissive intervention.

1999). Having concluded that the Fund may properly be a party to this action under Fed. R. Civ. P. 17, that the motion is timely and will not prejudice or delay the adjudication of the dispute between the original parties so long as certain conditions are put in place, and that there is no dispute that the Fund's defense shares common questions of law and fact with the main action, the court finds permissive intervention appropriate.

4. *The Pretrial and Trial Schedule and Conditions on the Fund's Intervention*

First, the court does not anticipate continuing the June 9, 2021 trial date as a result of the Fund's intervention.

Second, the discovery and pretrial dates set in the court's October 19, 2020 Amended Scheduling and Pretrial Order [#251] and February 11, 2021 Amended Scheduling Order [#304] remain in place, except as specifically modified by the court.

The Fund shall serve its Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(A) no later than February 26, 2021, and shall not only provide "a description by category and location . . . of all documents, electronically stored information, and the tangible things that the disclosing party has in its possession, custody, or control that it may use to support its claims or defenses, unless the use would be solely for impeachment," but shall also serve Plaintiff and the Commonwealth Defendants copies of all such material by February 26, 2021.

The Fund is precluded from serving its own written discovery, but no later than February 26, 2021, Plaintiff and the Commonwealth Defendants shall provide to the Fund copies of the fact discovery they have exchanged thus far.

The parties shall then confer and file a joint report of any additional fact discovery that the Commonwealth or Plaintiff contends is required by virtue of the Fund's intervention. If the parties are unable to reach an agreement as to the scope of any additional fact discovery, any

14

motions for leave to reopen the fact discovery deadlines shall be filed no later than March 12, 2021. Any such motion shall put forth a schedule that does not require modifications to the June 2021 trial date.

IV.    Conclusion

For the reasons set forth above, the Fund's Motion to Intervene [#269] is GRANTED IN PART. The Fund is granted leave to intervene in this action pursuant to Fed. R. Civ. P. 24(b) subject to the conditions set forth in this order.

IT IS SO ORDERED.

Date: February 17, 2021                                    /s/ Indira Talwani
                                                           United States District Judge