UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MAX STRAHAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10639-IT |
| | * | |
| SECRETARY, MASSACHUSETTS | * | |
| EXECUTIVE OFFICE OF ENERGY AND | * | |
| AND ENVIRONMENTAL AFFAIRS, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

ORDER GRANTING NON-PARTY CENTER FOR COASTAL STUDIES'
MOTION TO QUASH

February 17, 2021

TALWANI, D.J.

Before the court is Non-Party Center for Coastal Studies' ("Coastal Studies") Motion to
Quash Non-Party Subpoena and Deposition Notices [#272]. Coastal Studies' motion seeks to
quash five subpoenas that Plaintiff has served upon Coastal Studies and/or its employees seeking
documents and deposition testimony. For the reasons set forth below, the motion to quash is
GRANTED without prejudice to Plaintiff serving a limited-in-scope document subpoena seeking
complete copies of specific, identified documents Coastal Studies previously produced to the
Commonwealth or to the National Oceanic and Atmospheric Administration ("NOAA") where
Plaintiff has first sought production of the documents from the Commonwealth or NOAA and
the specific Coastal Studies' documents were not produced, or were produced in redacted form,
by the Commonwealth or NOAA.

1. *The Subpoenas Served*

Plaintiff served five subpoenas on Coastal Studies and its employees. The document subpoena, Exhibit A, Coastal Studies' Motion to Quash [#273-1], requests all "documents and communications"[1] that fall in eight different categories of documents. These include "[a]ll documents and communications regarding any whale (of any species) sighted in Northeast United States waters entangled in fishing gear since 1995" and "[a]ll documents and communications regarding any fishing gear involved in any entanglement of wildlife." Exhibit A, Requests ¶¶ 2, 4 [#273-1]. In addition to the broad requests, Plaintiff includes more targeted requests as to specific entanglements. Id. ¶¶ 5–8. Plaintiff also requests "[a]ll documents and communications regarding the Atlantic Large Whale Disentanglement Network Site," including in this request "any information posted, stored, downloaded, viewed, or accessible by you or your agent." Id. ¶ 3. Plaintiff requests documents and communications dating back to 2001, but also requests documents and communications from before 2001 if they were "utilized, or in effect, at any point" since. Exhibit A, Instructions ¶ 25 [#273-1].

Three of Plaintiff's four deposition subpoenas seek testimony from the directors of Coastal Studies' Right Whale Ecology Program, Humpback Whale Studies Program, and Maine Animal Entanglement Program. Exhibits B–D, Coastal Studies' Motion to Quash [#273-2], [#273-3], [#273-4]. The final deposition subpoena demands that Coastal Studies designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) for examination on

---

[1] Plaintiff's subpoena defines "communication" to include "oral and written communications of any kind, such as electronic communications, e-mails, SMS messages, instant messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings transmitting information." Definitions ¶ 6, Exhibit A to Coastal Studies' Motion to Quash [#273-1].

2

thirteen topics. Exhibit E, Coastal Studies' Motion to Quash [#273-5]. Twelve topics concern Coastal Studies' "research, study, writing, and/or discussions" on a wide range of issues, including "behavior, biology, and status of the North Atlantic Right Whale," the use and regulation of vertical buoy ropes in Massachusetts, and the effects of vertical buoy ropes on endangered marine species in Massachusetts. Exhibit E, Subjects for Examination ¶¶ 1–12 [#273-5]. The thirteenth category relates to Coastal Studies' "use or maintenance of the 'Atlantic Large Whale Disentanglement Network Site' or any other database that contains records of reported entanglements of whales, records of efforts to disentangle whales, communications between participants in the [Network], and/or other related records regarding entangled whales and entanglement events." Id. ¶ 24.

2. *Coastal Studies' Objections*

Coastal Studies objects that it is not a party to this dispute, and that the subpoenas are impermissibly overbroad and impose a burden disproportionate to Plaintiff's needs in the case. Coastal Studies' Mem. 4–6 [#273]. Coastal Studies argues further that even if the information requested is relevant to the case, demanding production from non-party Coastal Studies constitutes an undue burden where Plaintiff could obtain the information and documents from publicly available sources. Id. 6–8. As to the deposition subpoenas served on Coastal Studies' employees, Coastal Studies argues that Plaintiff is impermissibly seeking compelled expert testimony from Coastal Studies' employees, without a requisite showing of need. Id. 8–11.

3. *Plaintiff's Response*

Plaintiff contends that Coastal Studies appears to have information relevant to this lawsuit, including "information on when and where whales, including the North Atlantic right whales, are found entangled." Pl.'s Opp'n 11 [#290]. Plaintiff anticipates that this information

will include "the types of ropes in which these whales are entangled, including rope licensed by the defendants" and that this information "will show that North Atlantic right whales continue to be entangled by Massachusetts-licensed gear in Massachusetts waters." Id.

Plaintiff does not dispute that his requests are broad, but contends they were drafted "broadly out of an abundance of caution," and that he anticipated that the parties would "negotiate down the scope of discovery." Id. at 5, 12. Plaintiff proposes that he start with a Rule 30(b)(6) deposition on an amended list of topics that could be used to map the relevant information that is in Coastal Studies' possession. See id. at 8, 12 [#290]; Exhibit A, Plaintiff's Proposed Amended 30(b)(6) Topics [#290-1]. Plaintiff requests that he be permitted thereafter "to propound document requests tailored to the information the Center collects and maintains regarding North Atlantic right whale entanglements as determined in the 30(b)(6) deposition." Pl.'s Opp'n 12 [#290]. Plaintiff "anticipates that these document requests will center on obtaining read-only access to the Atlantic Large Whale Disentanglement Network that the Center maintains" and states that he would only seek materials since 2010 unless "the 30(b)(6) deposition reveals good cause to seek limited discovery for earlier years." Id. at 13.

Plaintiff argues that it is important to be able to obtain the documents from Coastal Studies as well as the from the Commonwealth or NOAA because "in many cases when a party obtains what should be the same set of documents from two different sources a critical fact in the litigation turns out to be that one set omitted a document that was in the other set." Pl.'s Opp'n 11 [#290] (citing Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp., No. 08-mc-00017, 2008 WL 4853620, at *2 (E.D. Ark. Nov. 6, 2008)). Plaintiff contends further that he should be able to obtain the requested records from the original non-party source because it is not clear which government entity possesses the information. Id. at 12 (citing In re New England

4

Compounding Pharmacy, Inc. Prod. Liab. Litig., No. 13-md-2419-FDS, 2013 WL 6058483, at *8 (D. Mass. Nov. 13, 2013)). He contends, moreover, that when governmental entities produce such information, "they alter the documents such that key information is removed." Id. at 13.

Finally, Plaintiff asserts that he seeks only factual, and not expert, testimony from Coastal Studies and its employees. He contends that the goal of the 30(b)(6) deposition is "to understand the type of information [Coastal Studies] maintains and sends to the defendants regarding whale entanglements" and that the individual depositions are sought "as fact witnesses to whale entanglements." Id. at 14.

*4. Discussion*

Federal Rule of Civil Procedure 45 makes plain that *before* an attorney or a party serves a subpoena, he or she must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). That appears not to have happened here. Instead, both the document subpoena and the Rule 30(b)(6) subpoena are indisputably overbroad.

Nor does Plaintiff's subsequent offer of a more limited Rule 30(b)(6) deposition solve the problem. Plaintiff argues that "[c]ase law within this circuit supports [his] approach." Pl.'s Opp'n 9 [#290]. Not so. Although the case cited, Mitsui & Co. (U.S.A.) v. Puerto Rico Water Res. Auth., stands for the proposition that a Rule 30(b)(6) deposition can eliminate unnecessary discovery and diminish burdens of discovery, see 93 F.R.D. 62, 65 (D.P.R. 1981), it does not support Plaintiff's approach of serving indefensibly broad document subpoenas *followed by* an "offer" to narrow the scope of the subpoenas through a Rule 30(b)(6) deposition.

In any event, even if Plaintiff had begun with the proposed Rule 30(b)(6) notice submitted with his opposition to the motion to quash and then served document requests tailored

to the information obtained through that process, the contemplated document production would still create an *undue* burden on non-party Coastal Studies. Plaintiff seeks to have non-party Coastal Studies duplicate production that Plaintiff either has already obtained from the Commonwealth Defendants, or could have obtained from the federal government through a FOIA request.[2] Where, as here, "the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty witness often will constitute an undue burden." 9 James Wm. Moore et al., Moore's Federal Practice, Civil § 45.32 (2020).

Plaintiff's arguments for why this general rule does not apply do not present a persuasive basis for ordering non-party Coastal Studies to duplicate production available elsewhere. First, Plaintiff's claim that duplicative production is necessary to discern discrepancies between different sets of records is not tied in any meaningful way to the Endangered Species Act claim before the court.

Second, Plaintiff argues that he should be able to obtain the requested records from the original non-party source because it is not clear which government entity possesses the information. Pl.'s Opp'n 12 [#290] (citing New England Compounding Pharmacy, 2013 WL 6058483, at *8). But beyond merely asserting that Coastal Studies has not directed him to the specific government agencies, Plaintiff has provided no basis from which the court can conclude that Plaintiff does not know which state and federal government agencies would have the

---

[2] Plaintiff does not contest that Coastal Studies "produces all of its reports and data concerning its whale-saving activities to the Commonwealth and/or to NOAA." Coastal Studies' Mem. 7 [#273].

requested information or that there are a multiplicity of agencies that may have the documents so as to justify the burden Plaintiff's request would impose on a non-party.

Third, Plaintiff also argues that duplicative production from Coastal Studies would serve an important purpose since the "communications between the non-party and public source are at issue." Pl.'s Opp'n 12 [#290]. Specifically, Plaintiff contends that material produced by Coastal Studies may reveal "the extent to which the State was aware (or could have educated itself) of the damages VBRs pose to right whales." Id. at 13. But Plaintiff does not explain how the state's knowledge (or lack thereof) of the effects of its regulatory scheme on endangered species tends to prove or disprove any issue of fact or law in this cause of action.

For these reasons, Plaintiff's request to obtain a duplicative set of the original documents from non-party Coastal Studies constitutes an undue burden on a non-party. Accordingly, Plaintiff's proposed Rule 30(b)(6) deposition, which seeks "to ascertain what types of relevant information" Coastal Studies maintains is likewise unnecessary.

Putting aside Plaintiff's demand to obtain a duplicative set of the original documents from Coastal Studies, Plaintiff has identified specific scenarios where information is *only* available from Coastal Studies either because the federal government[3] only produced the material in redacted form in response to a FOIA request or because the state government did not maintain a copy[4] of the relevant material. See Exhibits B & C, Pl.'s Opp'n [#290]; Pl.'s Sur-

---

[3] Although the state government may also redact materials produced through state public records requests, where, as here, the state is a party to this action, Plaintiff has not explained why he cannot obtain unredacted documents through discovery on the party.

[4] Although Coastal Studies "produces all of its reports and data concerning its whale-saving activities to the Commonwealth and/or to NOAA," Coastal Studies' Mem. 7 [#273], the Commonwealth has communicated to Plaintiff that it will sometimes not save all materials produced with these reports. For example, while Coastal Studies will email reports to the

Reply [#307]; Pl.'s Letter [#306]. In these specific scenarios, any burden on non-party Coastal Studies would not be undue given the undisputed relevance of the documents to Plaintiff's claim and that the production would not be unnecessarily duplicative for the reasons set forth above. Accordingly, Plaintiff is permitted to serve a document subpoena on Coastal Studies requesting specific documents to the extent they meet either of these two criteria, that is, the requests shall be limited to production of complete copies of documents where the information was redacted, omitted, or no longer available in the copies obtained from the Commonwealth defendants or NOAA.

Plaintiff's deposition notices fare no better. While Plaintiff's opposition emphasizes that it seeks only factual testimony from Coastal Studies and its employees, the "subjects of examination" for his Rule 30(b)(6) deposition indicate that the information Plaintiff seeks is the experts' opinions, not facts. See Exhibit E, Subjects for Examination ¶¶ 1–12 [#273-5]. Even assuming that Plaintiff's objective was to depose the three named scientists not on topics identified in the Rule 30(b)(6) notice but "as fact witnesses to whale entanglements," as he states in his opposition, Plaintiff has provided no explanation of what personal knowledge these scientists may have that could be relevant to Plaintiff's claims or remedies. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . . This rule does not apply to a witness's expert testimony under Rule 703); Fed. R. Evid. 703 ("An expert may base an opinion on facts or

---

Commonwealth, the Commonwealth will routinely not download all of the information contained in these reports. As a result, the Commonwealth's document production will contain information from which Plaintiff may identify that a report was shared between Coastal Studies and the Commonwealth, but not be able to see the entire contents of the report. See Pl.'s Letter [#306].

data that the expert has been made aware of or personally observed"). Accordingly, Plaintiff's deposition notices are also quashed.

*        *        *

For the reasons set forth above, Non-Party Center for Coastal Studies' <u>Motion to Quash</u> [#272] is GRANTED.

IT IS SO ORDERED.

Date: February 17, 2021

<u>/s/ Indira Talwani</u>
United States District Judge