UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MAX STRAHAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10639-IT |
| | * | |
| SECRETARY, MASSACHUSETTS EXECUTIVE OFFICE OF ENERGY AND AND ENVIRONMENTAL AFFAIRS, et al., | * * * * | |
| | * | |
| Defendants, | * | |
| | * | |
| and | * | |
| | * | |
| MASSACHUSETTS LOBSTERMEN'S SURVIVAL FUND, | * * | |
| | * | |
| Intervenor-Defendant. | * | |
| | * | |

MEMORANDUM AND ORDER

June 3, 2021

TALWANI, D.J.

Plaintiff Richard Max Strahan's Amended Complaint [#68] alleges that the Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs and the Director of the Massachusetts Division of Marine Fisheries (collectively, "the Commonwealth Defendants") have promulgated a regulatory scheme for lobsterpot and gillnet fisheries that violates the federal Endangered Species Act (the "Act"). Specifically, Plaintiff alleges the Commonwealth Defendants are acting in violation of the Act by promulgating regulations that require fishermen in the Commonwealth to deploy gear, such as vertical buoy ropes (VBRs), that harm, capture, or kill endangered whales and sea turtles. Plaintiff requests a declaration that the Commonwealth

Defendants have violated the Endangered Species Act and a permanent injunction prohibiting the Commonwealth Defendants from continuing to license the use of VBRs in state waters. The Massachusetts Lobstermen's Survival Fund ("the Fund"), an unincorporated association of Massachusetts lobstermen, has intervened as a Defendant in this action. A bench trial on Plaintiff's ESA claim will commence on June 9, 2021.

The Commonwealth Defendants and the Fund have moved, in limine, to exclude, in whole or in part, the testimony of two witnesses disclosed by Plaintiff as witnesses Plaintiff may use at trial to present expert testimony: Dr. Sarah Sharp, and Plaintiff Richard Strahan.[1] See Fund Mot. Limine Preclude Dr. Sharp [#400]; Commonwealth's Mot. Limine Preclude in Part Dr. Sharp [#418]; Commonwealth's Mot. Limine Exclude Strahan [#415]. For the reasons set forth below, the Fund's Motion in Limine to Preclude Dr. Sharp [#400] and the Commonwealth's Motion in Limine to Preclude Dr. Sharp [#418] are DENIED and the Commonwealth Defendants' Motion in Limine to Preclude Expert Testimony of Strahan [#415] is ALLOWED in part and DENIED in part.

I. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] The Commonwealth and the Fund have also moved, in limine, to exclude the testimony of Plaintiff's third expert witness, Dr. Michael Moore. See Fund's Mot. Limine Preclude Dr. Moore [#460]; Commonwealth's Mot. Limine Preclude Dr. Moore [#462]. Those motions will be addressed in a separate order.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharms., Inc., the Supreme Court explained that Rule 702 essentially provides three criteria for expert testimony. See 509 U.S. 579, 591 (1993). The first question, a foundational one, is whether the proposed testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." Id. at 591 (quoting Fed. R. Evid. 702). As the Supreme Court explained, this "goes primarily to relevance" as "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Id. (quoting 3 Weinstein & Berger ¶ 702[02], pp. 702–18). Assuming the proposed testimony would be relevant to a fact in issue, the next step is whether the expert witness is qualified "by knowledge, skill, experience, training, or education." Id. (quoting Fed. R. Evid. 702). If the expert is so qualified, the court must still ensure that the expert's reasoning or methodology underlying the testimony is scientifically reliable. Id. at 592–93; see also Fed. R. Evid. 702(b)–(d).[2]

---

[2] Some courts evaluate these three separate questions in a different order. See, e.g., Gopalratnam v. Hewlett-Packard Co., 877 F.3d 771, 779 (7th Cir. 2017) ("In performing its gatekeeper role under Rule 702 and Daubert, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue") (internal quotations omitted). Here, the court starts with whether the testimony will assist the court in understanding the evidence or determining a fact in issue.

II.  DISCUSSION

    a.  Dr. Sharp

The Commonwealth Defendants and the Fund challenge the admissibility of Dr. Sharp's testimony on all three criteria under Rule 702.[3] First, the Fund argues that Dr. Sharp's testimony is not relevant. Fund Mem. 9–10 [#401]. Second, both the Fund and the Commonwealth Defendants argue that Dr. Sharp is not qualified to provide testimony on several subsets of topics. Id. at 13–14; State Mem. 2–6 [#418]. Third, the Fund argues that Dr. Sharp's entire testimony should be excluded since it is unreliable opinion testimony. Fund Mem. 10–13 [#401]. The court addresses the three in turn.

    *i.  Relevancy of Testimony*

The Fund's first argument is that Dr. Sharp's proposed testimony is entirely irrelevant. Fund Mem. 9–10 [#401]. Specifically, the Fund argues that Dr. Sharp's anticipated testimony fails to account for the difference between Canadian and offshore gear versus Massachusetts-licensed coastal lobster gear and that "it is reasonable to assume that Massachusetts coastal lobster gear is not killing [North Atlantic right whales] because the only confirmed fishing gear found on dead [North Atlantic right whales] have been Canadian." Id. at 10. The Fund's argument is properly made through the cross-examination of Dr. Sharp or the proffer of

---

[3] The Fund's Motion in Limine also argues that Dr. Sharp should be precluded from testifying because she has not submitted an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B). However, as the court previously ruled with regard to the Fund's challenge directed to Dr. Moore, "[t]he triggering mechanism for the report requirement is the status of the disclosed witness, as a report is required 'if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.'" Elec. Order [#391] (quoting Fed. R. Civ. P. 26(a)(2)(B)). Because Dr. Sharp, like Dr. Moore, is not a retained expert or an employee of Strahan whose duties regularly involve giving expert opinion, Dr. Sharp is not required to submit an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B). See id.

competing evidence; mere disagreement with an expert's opinion, without more, is not grounds for preclusion of the expert's testimony.

### ii.  Qualification to Provide Expert Testimony

The court next turns to Defendants' argument that Dr. Sharp is not "qualified to testify by knowledge, skill, experience, training, or education" as to certain topics. State Mot. 1 [#418] (quoting Fed. R. Evid. 702); Fund Mot. 13–14 [#401]. The Commonwealth Defendants identify eight topics that it objects to Dr. Sharp providing expert opinion on: 1) sublethal injuries to right whales; 2) the number of North Atlantic right whales that die from entanglement; 3) rope strength; 4) the prevalence of North Atlantic right whales in Massachusetts state waters; 5) ocean drift; 6) identification of fishing gear; 7) the likelihood of North Atlantic right whales becoming entangled in Massachusetts waters; and 8) statistics. State Mem. 1 [#418]. The Fund identifies two additional topics: 1) where entanglements are occurring; and 2) the Commonwealth Defendants' new proposed weak rope regulations. Fund Mem. 13–14 [#401].

Dr. Sharp has an undergraduate degree in Human Biology from Stanford University and a doctorate in veterinary medicine from Tufts University. Pl.'s Opp'n, Ex. C [#444-3]. For the past five years, she has served as an Animal Rescue Veterinarian at the International Fund for Animal Welfare, where she provides veterinary care to live stranded marine mammals and leads necropsy examinations on dead stranded marine mammals, including large whales. Id. Dr. Sharp has testified (and the Defendants do not rebut) that Dr. Sharp is one of a "handful" of people qualified to lead necropsies on right whales and that she leads teams that attempt to provide medical intervention for alive whales that have been entangled. Pl.'s Opp'n, Ex. A 18 [#444-1]. Dr. Sharp is also well-published; she has published ten peer-reviewed articles, most relevant here

being a 2019 article that examined the "gross and histopathologic" condition of North Atlantic right whale mortalities between 2003 and 2018. Pl.'s Opp'n, Ex. C [#444-3].

Relying upon the Supreme Court's direction that Rule 702 be "interpreted liberally in favor of the admission of expert testimony," the First Circuit has held that "expert witnesses need not have overly specialized knowledge to offer opinions." Levin v. Dalva Bros., 459 F.3d 68, 78 (1st Cir. 2006). Instead, a witness's eligibility to provide expert opinion testimony turns simply on whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education" such that "given the proffered expert's background . . . the scientific, technical, or other specialized knowledge he offers will assist the trier better to understand a fact in issue." United States v. Alzanki, 54 F.3d 994, 1005 (1st Cir. 1995) (quoting Fed. R. Evid. 702). For example, in Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, the First Circuit held that it would have been abuse of the district court's discretion to exclude the testimony of a general practitioner medical doctor on the basis that he was not qualified to testify as an expert regarding ectopic pregnancies because he was not a doctor of obstetrics or gynecology (and, in fact, had never examined a patient with an ectopic pregnancy). 345 F.3d 15, 24–25 (1st Cir. 2003). The court reasoned that "the mere fact that [the doctor] was not a gynecologist does not mean that he was not qualified to give expert testimony regarding [plaintiff's ectopic] pregnancy" since, despite a lack of specialization, the physician's testimony "would still be helpful to the jury in resolving [the] case." Id.; see also Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it").

Here, Defendants' challenges to Dr. Sharp's qualifications mistakenly require Dr. Sharp to limit her testimony to her specific field of expertise as opposed to those topics where her knowledge, experience, and training makes it so that her expert opinion would be helpful to the trier of fact. For example, even if Dr. Sharp does not focus on sublethal injuries, her specialized knowledge nonetheless renders her capable of providing insight or opinion on sublethal injuries that would assist a lay judge (or jury), which is the standard under Fed. R. Evid. 702. Likewise, the Commonwealth Defendants' argument that Dr. Sharp cannot provide an opinion on the number of whales that have been entangled because she did not author the article on which the opinion is based overlooks the fact that Dr. Sharp's specific background (indeed, Dr. Sharp's research was relied upon by the article) allows her to form well-founded opinions about the study's findings. Many of Defendants' other arguments are similarly flawed; the objections to Dr. Sharp providing expert testimony on the prevalence of North Atlantic right whales in Massachusetts state waters, where rope entanglements are occurring, the likelihood of North Atlantic right whales becoming entangled in Massachusetts waters, and the Commonwealth Defendants' new proposed weak rope regulations draw far too narrow a boundary on the range of Dr. Sharp's knowledge, experience, training, and education so as to require a level of specialization that is simply not required by the Federal Rules. Defendants' objections to Dr. Sharp's testimony on ocean drift, rope strength, and fishing gear face a different problem as Defendants' arguments rest on the misapprehension that Plaintiff seeks to offer Dr. Sharp to opine broadly on these topics. But where, as here, Plaintiff has stated that he only intends to proffer Dr. Sharp's testimony on these topics to the extent they relate to her knowledge and experience vis-à-vis entangled whales, Dr. Sharp appears qualified to provide expert testimony on these topics.

In sum, the question under Fed. R. Evid. 702 is whether the putative expert is qualified based upon knowledge, skill, experience, training, or education such that the expert's specialized knowledge will help the factfinder understand the evidence or determine a fact in issue. Dr. Sharp is so qualified based upon her knowledge, education, training, and experience. To the extent that Defendants contend that Dr. Sharp's opinions go beyond the center of mass of her field of expertise and should therefore be accorded less weight, that is an argument properly developed through cross examination and by presenting contrary evidence. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

### iii. Reliability of Testimony

The Fund also argues that Dr. Sharp's expert opinion is unreliable and thus inadmissible as expert testimony under Fed. R. Evid. 702. Specifically, the Fund contends that Dr. Sharp's testimony does not meet the requirements for reliability under Daubert since Dr. Sharp's conclusions regarding whale entanglements have not been empirically tested and do not have known error rates. See Fund Mot. 10–13 [#401].

The Fund's reliability argument misconstrues the Supreme Court's holding in Daubert. In Daubert, the Court set aside the requirement that expert testimony must be "generally accepted" in the relevant field on the basis that "a rigid 'general acceptance' requirement would be at odds with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to 'opinion' testimony." 509 U.S. at 588 (internal quotations omitted). Instead, the Court emphasized that the admissibility of expert scientific testimony turns instead on the question of whether the testimony is "ground[ed] in the methods and procedures of science" as opposed to

8

"subjective belief or unsupported speculation." Id. at 590. The court did not attempt to set out a hard and fast rule that differentiated the two but did provide "general observations" to assist the trial court in exercising its discretion to admit or exclude expert testimony. Id. at 593. This discussion suggested that trial courts may consider "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory's or technique's acceptance within the relevant discipline." United States v. Mooney, 315 F.3d 54, 62 (1st Cir.2002) (citing Daubert, 509 U.S. at 593–94). However, the Court was clear that it did not "presume to set out a definitive checklist or test" because "[m]any factors will bear on the inquiry." Daubert, 509 U.S. at 593; see also United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006) ("The trial court enjoys broad latitude in executing its gate-keeping function; there is no particular procedure it is required to follow"). Indeed, where the indicia cited by the Supreme Court may not be relevant to a specific topic, "courts applying Daubert have utilized many other factors, including 'whether the expert has adequately accounted for obvious alternative explanations . . . [and] whether the expert has employed the same level of intellectual rigor in the courtroom as in the relevant field of expertise.'" In re Neurontin Mktg., Sales Pracs., & Prod. Liab. Litig., No. 04-CV-10981-PBS, 2009 WL 3756328, at *4 (D. Mass. Aug. 14, 2009) (quoting Blanchard v. Eli Lilly & Co., 207 F.Supp.2d 308, 316 (D. Vt. 2002)).

      Where, as here, it is not practical (or perhaps even feasible) for scientists to subject the topics on which Dr. Sharp opines (the causes of death of the North Atlantic right whale) to empirical testing and the establishment of known error rates, the Fund's focus on the absence of these two factors distracts from the central analysis as articulated by the Court and set forth in Fed. R. Evid. 702: (1) whether the testimony is based upon sufficient facts or data, (2) whether

the testimony is the product of reliable principles and methods, and (3) whether those principles and methods have been reliably applied to the facts of the case. See Fed. R. Evid. 702; see also Blanchard, 207 F. Supp. 2d at 317 ("The Court's task however is not to apply a rigid checklist to proposed opinion testimony, but to determine if it is based upon sufficient facts or data and is the product of reliable principles and methods, and if the principles and methods have been applied reliably to the facts of the case").

Here, Plaintiff's showing suggests that Dr. Sharp's expected testimony will meet this standard. First, Plaintiff contends that Dr. Sharp's testimony is based upon her medical training as a veterinarian and her years of experience studying alive, injured, and dead whales. See Pl.'s Opp'n, Ex. C [#444-3]. Second, Plaintiff asserts that Dr. Sharp's techniques and opinions regarding these assessments have been subjected to peer review and publication. Id. Third, Plaintiff states that Dr. Sharp's opinions account for and address alternative explanations for her observations. For example, in her deposition she described how she reached a conclusion of an entanglement-caused mortality only after 1) ruling out that the shark bites on the animal's carcass were not associated with a tissue reaction (suggesting the wounds were postmortem), 2) ruling out other disease processes with histopathological analysis, and 3) examining the animal's intestines to note recent feeding. Pl.'s Opp'n, Ex. A at 227–28 [#444-1]. Further, the Fund presents no indication that Dr. Sharp's methods are not generally accepted in her field nor that she has failed to employ the same intellectual rigor inside the courtroom as she does in her research and practice. Accordingly, the court finds no basis for excluding, in limine, Dr. Sharp's testimony on the basis that it is not reliable expert opinion under the standards set forth by the Federal Rules and the Supreme Court.

      b. <u>Mr. Strahan</u>

The Commonwealth Defendants have moved to exclude Strahan's expert testimony on several grounds including 1) that Strahan's proposed expert testimony is not on topics appropriate to this case; 2) that Strahan is not qualified to be an expert witness in this matter, and 3) that Strahan's methodology is unreliable. <u>See</u> Commonwealth Mot. [#419].[4] Because the court concludes that the topics that Strahan has identified in his expert disclosure do not clear the first or second criterion, the court does not turn to the question of the reliability of Strahan's expected expert testimony.

      i. *Relevancy of Testimony*

Strahan anticipates offering expert testimony on eight topics. <u>See</u> Strahan Rule 26(a)(2)(C) Disclosure [#419-1].

Several of the identified topics are not ones likely to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Namely, topics three ("the ruling in <u>Strahan v. Coxe</u> and the Commonwealth's continuing failure to satisfy the mandate of ESA § 9 and prevent ongoing harm to endangered marine species") and six ("that the harm to endangered marine species caused by the Commonwealth's licensing of VBRs constitutes a prohibited taking under § 9 of the ESA and must be immediately enjoined to prevent further injury to these species") go to the ultimate legal conclusion. It is well-settled that "[e]xpert

---

[4] The Commonwealth also contends that all of Strahan's testimony (both fact and expert opinion) should be excluded on the basis that Strahan failed to comply with the court's discovery orders. The court shares the Commonwealth's concern that Strahan's testimony hints at the possibility that Strahan did not produce all the requested materials. However, where the deposition testimony is, at best, inconclusive as to this point and where Strahan has represented, through counsel, that he has produced all responsive and unprivileged documents, such a sanction would not be appropriate.

testimony that consists of legal conclusions cannot properly assist the trier of fact." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997). Similarly, Strahan's offer of expert testimony on topic one ("the history, adoption, and purpose of the Endangered Species Act (ESA) and the Marine Mammal Protection Act (MMPA), including their prohibitions on the taking of endangered marine species") would invade the province of the court to interpret the applicable law and would offer opinions more appropriately set forth in briefs and attorney argument. See Bacchi v. Massachusetts Mut. Life Ins. Co., No. 12-CV-11280-DJC, 2016 WL 1170958, at *3 (D. Mass. Mar. 23, 2016) (collecting cases for the proposition that a party may not offer expert testimony on the legislative history of a statute). Furthermore, topic four ("the conflicting goals of and undue influence of commercial interests on federal and state agencies tasked with enforcing the laws designed to protect endangered marine species") may be relevant to policy decisions, but it is irrelevant to the court's adjudication of Plaintiff's claim. Accordingly, the court finds that any expert testimony on topics one, three, four, or six would not assist the court in understanding the evidence or determining a fact at issue and is therefore not admissible under Fed. R. Evid. 702.

The court next turns to Strahan's qualifications as an expert on the remaining topics identified in Plaintiff's expert disclosure: (2) "endangered marine species native to Massachusetts waters and the risk of injury and death to those species from entanglement in vertical buoy ropes deployed in the Commonwealth's lobsterpot and gillnet fisheries;" (5) "that the Massachusetts fishing industry is likely responsible for at least 80% of all entanglements of North Atlantic right whales in vertical buoy ropes in the United States annually;" (7) "the measures that must be implemented by the Division of Marine Fisheries (DMF) in order to prevent whale entanglements and promote the recovery of the North Atlantic right whale and

other endangered marine species;" and (8) "the feasibility of implementing ropeless fishing technologies in Massachusetts state waters."

### ii. Qualifications

Strahan earned an undergraduate degree in classics and a master's degree in liberal studies. See Commonwealth Mem., Ex. J [#419-10]. While Strahan testified during his deposition that he took classes in "biology, molecular biology, genetics," he was unable to identify what classes he took. Commonwealth Mem., Ex. C 97–103 [#419-3].

Strahan's background is as an activist and a campaigner. See Strahan Opp'n 8 [#454]. Between 1989 and July 2001, Strahan worked as a Campaign and Policy Director for Greenworld, Inc. Commonwealth Mem., Ex. J [#419-10]. In this role, Strahan's primary focus was lobbying for endangered species. Commonwealth Mem., Ex. C 8–11 [#419-3]. Between 2001 and 2018, Strahan served as the Chief Information Officer of Endangered Species Information Service, Inc. ("ESIS"). Commonwealth Mem., Ex. J [#419-10]. Strahan testified that ESIS collected and distributed information on endangered wildlife and would distribute that information to individuals working to protect endangered wildlife, through, for example, litigation. Commonwealth Mem., Ex. C [#419-3].[5] After concluding his work at ESIS, Strahan started working for Calm Earth Corporation ("Calm Earth") in May 2020 as its Chief Science Officer. Commonwealth Mem., Ex. J [#419-10]. Strahan stated that at Calm Earth he "review[s] fishing operations and how they hurt wildlife, and prospective technologies that would . . . hurt

---

[5] During his deposition, Strahan suggested that, while at ESIS, he worked on creating "geodatabases" that would map the locations of endangered species such as the North Atlantic right whale. Id. at 28. However, there is no indication that this was a particular focus of Strahan's work at ESIS as Strahan testified that the work was never even written down, published, or otherwise documented. Id. at 33:2–7.

wildlife less." Commonwealth Mem., Ex. C 35:2–7 [#419-3]. However, based upon further questioning, it appears that the focus of Strahan's work at Calm Earth is examining the sociological dynamics of fishermen who, in Strahan's opinion, fish in a manner that is contrary to federal law. Id. at 36:5–24. In addition, for the past 10 years, Strahan has concurrently been associated with Whale Safe USA, which he describes as a "professional association" that "support[s] a standard of whale safety along the United States coastline." Id. at 39–40.

Strahan has also written articles generally directed towards the field of conservation. One article is a law review article published in the Boston College Environmental Affairs Law Review where Strahan argued for the need for a "green knight ethic" to protect endangered whales. Id. at 50:19–22. Strahan also wrote an unpublished thesis for his master's degree, which examined "why governments and people don't protect wildlife when they should." Id. at 47:1-4. In addition to the work that has been rendered to written form, Strahan has either been invited to or has attended several conferences where he advocated for the need to protect endangered wildlife and the mechanisms for enforcement under the Endangered Species Act and other wildlife laws. See, e.g., id. at 51:18–21; 50:19–22; 53:15–21.

Strahan may well be qualified to speak to issues peripheral to this litigation. For example, Strahan's education, writing, and work provide him with particular insight into the sociological factors that contribute to species extinction. He also may be qualified to speak to issues central to this litigation. For example, he is well-versed on the history of the Endangered Species Act and has included in his expert declaration an analysis of the Act, its history, and its application here.

See Commonwealth Mem., Ex. B 75–93 [#419-2]. However, these issues are not topics for which expert testimony may be helpful to the court.

Instead, the court must consider Strahan's qualifications to speak to the topics identified in Plaintiff's expert disclosure. Topics two, five, and seven all require an expert to speak with some amount of specific knowledge or experience in scientific or technical fields. In considering the question of qualifications, the court is mindful of the fact that "education is not the sine qua non of qualification as an expert witness." United States v. Monteiro, 407 F. Supp. 2d 351, 373 (D. Mass. 2006); see also Fed. R. Evid. 702 advisory committee's note ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience"). However, putting Strahan's lack of formal education or training to the side, Strahan's experience is not of the type of give him particular insight into the biological or ecological factors that may be at issue in this litigation, but on activism and the use of citizen-plaintiff provisions to seek relief from the courts. The court does not discount the importance of such knowledge, but that knowledge and experience is a distinct category of knowledge from the scientific, technical, or other specialized knowledge necessary to opine on topics two, five, and seven. In sum, the court finds that Strahan does not have the scientific or technical knowledge, training, or experience to provide expert testimony on these topics.

Topic eight (the feasibility of ropeless fishing) presents, at least on its face, a slightly closer question since Strahan has some first-hand experience in this topic based on his application and receipt of a permit to study the feasibility of ropeless fishing in Massachusetts waters. See Commonwealth Mem., Ex. C 93:24–94:1 [#419-3]. However, upon closer inspection, Strahan's experience with ropeless fishing is limited to his observation that lobster fishing without ropes is "not a complicated situation," and that he has plans to demonstrate the

15

feasibility of ropeless fishing by using SCUBA divers to retrieve lobster pots. Commonwealth Mem., Ex. C 92–94 [#419-3]; see also Commonwealth Mem., Ex. B 103–04 [#419-2] (describing Strahan's intention to explore the use of SCUBA divers to retrieve lobster pots). Strahan's intention to study the feasibility of ropeless fishing one day does not provide him the knowledge, experience, or training to opine on the feasibility of ropeless systems today.

III. CONCLUSION

The Fund's Motion in Limine to Preclude Dr. Sharp [#400] and the Commonwealth Defendants' Motion in Limine to Preclude Dr. Sharp [#418] prior to trial are DENIED. As set forth more fully above, Defendants' challenges of Dr. Sharp's expert testimony are matters for cross-examination or the offer of a competing expert witness; they do not support preclusion of the expert's testimony under the Federal Rules. However, the Commonwealth Defendants' Motion in Limine to Preclude Expert Testimony of Strahan [#415] is ALLOWED IN PART as the court finds that Mr. Strahan's proposed expert testimony either relates to topics that are not properly the subject of expert opinion or topics for which Mr. Strahan is not qualified to provide expert testimony. However, the Commonwealth Defendants' Motion [#415] is DENIED to the extent it requests preclusion of Mr. Strahan's fact testimony as a discovery sanction.

IT IS SO ORDERED.

Date: June 3, 2021 /s/ Indira Talwani
United States District Judge